**Amy M. LAWSON, Respondent,**

v.

**DIRECTOR OF REVENUE, State
of Missouri, Appellant.**

**No. WD 62832.**

Missouri Court of Appeals,
Western District.

July 13, 2004.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 31, 2004.

Application for Transfer Denied
Oct. 26, 2004.

Peter Lyskowski, Jefferson City, for appellant.

Michael Shipley, Kansas City, for respondent.

RONALD R. HOLLIGER, Judge.

The Director appeals an order setting aside the administrative suspension of Amy Lawson's driver's license following a trial de novo. The Director raises two points on appeal. First, the Director contends that the trial court erred in setting aside the suspension of Lawson's license on the basis that the Director had not introduced into evidence the city ordinance under which Lawson had been arrested. The Director takes the position that he only need establish a violation of state law to support the administrative suspension. Second, the Director argues that the trial court's judgment setting aside the administrative suspension was against the weight of the evidence, was unsupported by substantial evidence, and misapplied the law because the Director introduced evidence that Lawson's blood alcohol content was over the legal limit and Lawson failed to rebut the Director's *prima facie* case.

We hold that the trial court's conclusion that Lawson rebutted the Director's *prima facie* case was supported by substantial evidence and was not against the weight of the evidence and, therefore, affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Amy Lawson was stopped for speeding by Officer Donald Ebert of the Oakview, Missouri, Police Department on the night

of December 6, 2001. During Ebert's contact with Lawson, he smelled an odor of alcohol, and he therefore asked her to undergo field sobriety testing. Lawson failed the three sobriety tests she was asked to perform. The officer also noted that Lawson's eyes were watery, glassy, and bloodshot, and that her pupils were dilated. His notes also indicated that her speech was slurred and that she swayed and staggered in her attempts to walk and turn. Lawson stated during the stop that she had consumed two beers prior to driving.

Lawson was placed under arrest and taken to the Oakview police station, where she was asked (after being advised of her rights under *Miranda* and the Missouri Implied Consent Law) to submit to breath testing of her blood alcohol level. Lawson consented to testing, and the breath testing equipment produced a resulting blood alcohol result of .081 percent. Lawson was charged with the offenses of exceeding the posted speed limit, a violation of Oakview Municipal Ordinance 97–48.3, and operating a motor vehicle on the street while intoxicated, a violation of ordinance 97–43.2. She subsequently pled guilty to those offenses in municipal court.

Lawson was notified that her license was to be administratively suspended pursuant to §§ 302.500–.545, RSMo. On February 26, 2002, she filed her petition for a trial de novo in the circuit court. The matter then proceeded to trial on February 19, 2003. At trial, the court found that the Director had not made a *prima facie* case because the municipal ordinance under which Lawson had been arrested had not been entered into evidence. Further, the trial court found that Lawson had rebutted the Director's evidence regarding her breathalyzer test results, through expert testimony that indicated, based upon the State's maintenance records for the breath testing equipment, that the machine was render-

ing results approximately .002 percent high. Based on that expert testimony, the trial court concluded that Lawson's blood alcohol level was only .079 percent at the time of the arrest. The court, therefore, set aside the administrative suspension of Lawson's license.

The Director now appeals.

## DISCUSSION

In reviewing the judgment of the trial court, following a trial de novo concerning an administrative driver's license suspension we proceed under the standard provided by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Reckner v. Fischer*, 121 S.W.3d 296, 300 (Mo.App.2003). Under that standard, "[w]e will affirm the judgment of the trial court unless there is no substantial evidence to support it, the judgment is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* We accept the evidence that supports the trial court's judgment and all reasonable inferences therefrom, disregarding all contrary evidence and inferences. *Id.*

In order to make a *prima facie* case for license suspension, the Director is required to show two elements by a preponderance of the evidence. First, the Director must establish that the person was arrested upon probable cause. *Singleton v. State*, 120 S.W.3d 218, 221 (Mo.App.2003). Second, the Director must show that the person had a blood alcohol concentration of .080 percent at the time of the arrest. *Id.* If a municipal ordinance is the basis for the revocation, the director must also show that the arresting officer has been certified by the Department of Public Safety. *Siehndel v. Russell–Fischer*, 114 S.W.3d 449, 451 (Mo.App.2003).

The Director has the burden to present a *prima facie* case. If that threshold is met, the driver is entitled to present evidence in an attempt to rebut

the Director's *prima facie* case. *Singleton,* 120 S.W.3d at 221. While the burden of production shifts to the driver when the Director establishes a *prima facie* case, the burden of persuasion remains with the Director throughout the proceedings. *Verdoorn v. Dir. of Revenue,* 119 S.W.3d 543, 546 (Mo. banc 2003).

The issues on appeal in the present matter concern both the Director's *prima facie* case and Lawson's rebuttal of that case. The Director's first point on appeal argues that the trial court improperly held that admission of the ordinance was necessary to establish a *prima facie* case. We need not reach this issue, however, as the Director's second point on appeal is dispositive.[1] In that second point on appeal, the Director argues that the trial court erred in concluding that Lawson had rebutted the Director's *prima facie* case. Specifically, the Director contends that Lawson failed to rebut the second element of that case, namely that Lawson had a blood alcohol level of .080 percent at the time of the arrest. Lawson responds that this element of the case was rebutted by substantial evidence she presented during the trial de novo proceedings.

▆ That evidence was offered in the form of the deposition testimony of Dr. William Hemphill, a forensic toxicologist. His testimony focused upon the maintenance testing results of the breathalyzer subsequently used to test Lawson, and how it indicated that the machine tended to register a blood alcohol level that was inaccurately high. The maintenance testing includes a calibration check in which a sample solution is used that is supposed to provide a sample readout of .100 percent (with a margin of error of .05 percent),

over a set of three separate tests. The machine used on Lawson had been tested only a few days previously. During that testing, the machine produced calibration test results of .099, .102, and .102 during the three tests.

Dr. Hemphill testified that, based on the calibration test results, that the machine was registering average results that were .002 percent high. Consequently, when Lawson underwent breath testing, which indicated a .081 blood alcohol level, Hemphill testified that, as a matter of reasonable medical certainty, her actual blood alcohol level was somewhere between .079 and .080, just below the .80 limit.

The Director argues, on appeal, that the trial court's ruling that this rebutted the Director's claim that Lawson had a blood alcohol level of at least .080 was against the weight of the evidence and misapplied the law. Essentially, the Director argues that the administrative record laid a sufficient foundation to establish that Lawson's blood alcohol level exceeded the minimum of .080, based on the fact that the testing procedures were properly followed and were employed by individuals who were certified and that the test equipment was approved and properly maintained. The Director also argues that Hemphill's testimony should not have been considered because the maintenance test results were within the margins of error permitted by law.

In resolving this point on appeal, we must reconcile the present matter with this court's recent decision in *Reckner v. Fischer,* 121 S.W.3d 296 (Mo.App.2003). In *Reckner,* the breath-testing unit began returning results of .004 when tested using a person with no alcohol in their system.

1. Even if the trial court erred in finding that the Director failed to establish a *prima facie* case, a matter we expressly decline to consider, we must affirm if we conclude that the trial court properly held that the evidence adduced by Lawson would rebut a *prima facie* case. Therefore, we will assume, for purposes of discussion of the Director's second point on appeal, that the Director established a *prima facie* case.

*See id.* at 299–300. This anomaly was first observed some time *after* Reckner, the driver, had been tested. *See id.* at 299. During the trial de novo, the trial court excluded the breath test results, on the basis of that inaccuracy. *Id.* at 300. This court reversed, holding that the test results were within the margin of error permitted by regulation. *See id.* at 305. The breathalyzer did not need to be functioning perfectly for admission of the test results; it need only be operating properly within the specifications established by state regulation. *See id.* at 307.

*Reckner* is distinguishable from the present matter on two important grounds. First, in *Reckner,* the precise issue was the admissibility of the breath test results. The question of whether evidence is admissible is different than the question the trial court faces in determining whether evidence is either substantial or persuasive. Here, the breath testing results were not excluded, and were considered by the trial court in reaching its judgment. Second, in *Reckner,* the .004 percent discrepancy would not have brought the driver's blood alcohol level below the legal limit, as Reckner's breath test result was .144 percent. *See id.* at 305. Thus, the discrepancy would not have benefited the driver, even if taken into consideration. Here, while the machine was operating within the parameters established by state regulation (and, therefore, rendering the results *admissible* ), the calibration test results support an argument by Lawson's expert that Lawson's blood level was below .080 percent.

Ultimately, the trial judge was required to assess the weight to give to the evidence presented by the parties on this issue. Viewing the evidence in the light most favorable to the judgment, we conclude that there was a sufficient basis in the record for the trial court to conclude that, based upon the maintenance records and Dr. Hemphill's testimony, that Lawson's blood alcohol level fell just below the minimum level of .080 percent. As such, the trial court did not err in holding that Lawson had rebutted the Director's *prima facie* case, setting aside the revocation of her driver's license, and ordering its reinstatement. *See Booth v. Dir. of Revenue,* 34 S.W.3d 221, 224 (Mo.App.2000) (*overruled in part on other grounds by Verdoorn v. Dir. of Revenue,* 119 S.W.3d 543, 546 (Mo. banc 2003)).

Given that we have concluded that Lawson rebutted the Director's *prima facie* case, we need not reach the Director's first point on appeal. Therefore, we deny the Director's second point on appeal and affirm the judgment below.

PAUL M. SPINDEN, Presiding Judge, and LISA WHITE HARDWICK, Judge, concur.