**Jerry Wayne HURT, Petitioner–Respondent,**

v.

**DIRECTOR OF REVENUE, STATE of Missouri, Respondent–Appellant.**

**No. SD 28988.**

Missouri Court of Appeals, Southern District, Division One.

May 7, 2009.

Motion for Rehearing or Transfer Denied May 29, 2009.

Jeremiah W. (Jay) Nixon, Atty. Gen., James A. Chenault, III, Asst. Atty. Gen., Jefferson City, MO, for Appellant.

John D. Berger, Rolla, MO, for Respondent.

JEFFREY W. BATES, Judge.

The Director of Revenue (the Director) appeals from a judgment setting aside the administrative suspension of the driving privileges of Jerry Hurt (Hurt) after a trial *de novo* in circuit court. The Director contends, *inter alia,* that the trial court erred by finding the results of Hurt's breathalyzer test invalid due to the presence of chewing tobacco in his mouth throughout the 15–minute observation period preceding the test. Because that contention has no merit and the issue is dispositive of the entire appeal, the judgment reinstating Hurt's driving privileges is affirmed.

The Department of Revenue is authorized to suspend the driver's license of any person "arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight ...." § 302.505.1.[1] After an adverse decision from the Department of Revenue, a driver may file a petition for a trial *de novo* in circuit court. § 302.535.1; *Hlavacek v. Director of Revenue,* 129 S.W.3d 374, 377 (Mo.App.2003). *Lawson v. Director of Revenue,* 145 S.W.3d 443 (Mo.App.2004), explains the obligations imposed upon the Director and the driver at such a trial:

> In order to make a *prima facie* case for license suspension, the Director is required to show two elements by a preponderance of the evidence. First, the Director must establish that the person

---

**1.** All references to statutes are to RSMo Cum.  Supp. (2008).

was arrested upon probable cause. Second, the Director must show that the person had a blood alcohol concentration of .080 percent at the time of the arrest.... The Director has the burden to present a *prima facie* case. If that threshold is met, the driver is entitled to present evidence in an attempt to rebut the Director's *prima facie* case. While the burden of production shifts to the driver when the Director establishes a *prima facie* case, the burden of persuasion remains with the Director throughout the proceedings.

*Id.* at 445–46 (citations omitted).

This Court reviews the trial court's judgment after a trial *de novo* pursuant to the familiar standards established by Rule 84.13(d) and *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Ruth v. Director of Revenue*, 143 S.W.3d 741, 744 (Mo.App.2004).[2] The judgment will be affirmed unless there is no substantial evidence to support it, the decision is contrary to the weight of the evidence, or the trial court erroneously declared or applied the law. *Verdoorn v. Director of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003). In determining whether the trial court's judgment is supported by the evidence or is against the weight of the evidence, we defer to the trial court's credibility determinations. *See Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002).

The record reveals that Hurt's driver's license was suspended by the Department of Revenue after an administrative hearing in May 2007. Thereafter, Hurt timely filed a request for a trial *de novo* in circuit court. The trial was held in January 2008.

The Director's evidence consisted of Exhibit A, which was a certified copy of the Director's records concerning Hurt, and testimony from Salem city policemen John Chase (Officer Chase) and Randall Brooks (Corporal Brooks). The following is a summary of that evidence.

At 1:12 a.m. on January 3, 2007, Officer Chase was on patrol when he was approached by a BMW with its headlights on high beam. The vehicle was traveling 12 miles over the posted speed limit. Officer Chase turned around and pursued the vehicle. As he approached, he observed the wheels on the BMW's left side cross over the center yellow line into the oncoming lane of traffic. He activated his emergency lights and stopped the car. Corporal Brooks arrived at the scene shortly thereafter.

Hurt was alone inside the car. When he was asked for his license and insurance card, he handed his entire wallet out the window. After Officer Chase explained that he could not accept the wallet, Hurt was able to produce his driver's license. His eyes were glassy, and he had a moderate odor of alcohol about his person. He admitted that he had consumed a few drinks at the Eagle's Club.

Officer Chase administered three field sobriety tests: horizontal gaze nystagmus; the one-leg stand; and the walk-and-turn. Hurt failed all three. He was arrested for driving while intoxicated and transported to the police station by Corporal Brooks. Once there, Officer Chase prepared an alcohol influence report (AIR). Hurt was asked if he was wearing false teeth, and he said no. He agreed to have his blood alcohol tested using a Data Master machine. Officer Chase observed Hurt during the entire 15–minute observation period and testified that "I didn't observe him

---

2. All references to rules are to the Missouri Court Rules (2008). *Murphy* interpreted the provisions of former Rule 73.01(c). The provisions of that rule were transferred, in essentially the same form, to Rule 84.13(d) effective January 1, 2000.

having any type of content in his mouth. I mean he didn't, he didn't spit anything out, he didn't have any gum, chewing tobacco, smoking or anything like that." Officer Chase chewed tobacco himself, and he could "most normally" tell when someone was chewing tobacco. However, he admitted that he did not ask Hurt whether he had anything in his mouth during the observation period.

Corporal Brooks also was present during the 15–minute observation period. He had seen people chewing tobacco and "sometimes" could tell if they were doing so. He did not see Hurt place anything into his mouth or see anything come out of his mouth during that time frame. However, Corporal Brooks did not ask Hurt whether he had anything in his mouth. Corporal Brooks administered the blood alcohol test, which showed that Hurt had a blood alcohol content of .121%.

To rebut the Director's case, Hurt presented testimony from himself and Dent County Deputy Sheriff Matt Pappert (Deputy Pappert). Their testimony is summarized below.

Hurt testified that he had been at the Eagles Club for a couple of hours before the traffic stop. While there, he had consumed two or three drinks. He left between 12:30 and 1:00 a.m. He had chewed tobacco since he was 19 years old. As soon as he left the club, he placed some chewing tobacco in his mouth. The Eagles Club was only two miles out of Salem, so Hurt was stopped within three to five minutes after he left. Neither Officer Chase nor Corporal Brooks: (1) asked Hurt whether he had anything in his mouth; (2) checked to see whether he had anything in his mouth; or (3) asked him to remove anything from his mouth. The chewing tobacco was still in his mouth when he

took the blood alcohol test. Hurt had chewing tobacco in his mouth while he was testifying at the trial *de novo*. He also removed a can of tobacco from his pants pocket and demonstrated how much tobacco he would typically place in his mouth between his cheek and gum.

Deputy Pappert testified that he was with Hurt at the Eagles Club until he left in the early morning hours of January 3. The pair had been sitting together at the same table for several hours. During that time, Hurt had two or three drinks. As a road officer, Deputy Pappert had stopped people for driving while intoxicated, and he knew how to administer field sobriety tests. Based on the deputy's observations of Hurt's speech and actions throughout the evening, he did not seem to be impaired or unsafe to operate a vehicle when he got ready to leave. If he had been, Deputy Pappert would have offered Hurt a ride home or a place to stay. Deputy Pappert also confirmed that Hurt generally put tobacco in his mouth on his way out the door of the Eagles Club.

The trial court entered a judgment reinstating Hurt's driving privileges. The court found the breathalyzer test results unreliable because neither Officer Chase nor Corporal Brooks noticed that Hurt had chewing tobacco in his mouth, and this substance remained there throughout the 15–minute observation period.[3] The court cited *Coyle v. Director of Revenue,* 181 S.W.3d 62 (Mo. banc 2006), in support of its decision. This appeal followed. The Director has raised four points of alleged error. For ease of analysis, they will be addressed in reverse order.

### Point IV

■ To establish a *prima facie* case for suspension of Hurt's driving privileges for

---

3. The judge made a specific factual finding that "[Hurt] had chewing tobacco in his mouth while testifying which was not readily perceptible."

driving while intoxicated, the Director had to present evidence showing that: (1) there was probable cause for the arrest; and (2) Hurt's blood alcohol level exceeded the legal limit. *Vanderpool v. Director of Revenue*, 226 S.W.3d 108, 109 (Mo. banc 2007). Once the Director made a *prima facie* case, Hurt was entitled to present rebuttal evidence that raised a genuine issue of fact regarding the validity of the blood alcohol test results. *Coyle*, 181 S.W.3d at 65. He did so by presenting evidence that he had chewing tobacco in his mouth throughout the 15–minute observation. The trial court believed this testimony, and this Court defers to that credibility determination. *See Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002). The trial court concluded that the presence of the chewing tobacco in Hurt's mouth invalidated the blood alcohol test results.

The Director's fourth point asserts this ruling was erroneous because Hurt failed to properly rebut the presumption that his blood alcohol test results were valid. According to the Director, Hurt's evidence was insufficient because: (1) he already had the tobacco in his mouth before the observation period began; and (2) he presented no independent evidence that the presence of tobacco affected the validity of the blood alcohol test. For the following reasons, that argument lacks merit.

The Missouri Department of Health (MDOH) has adopted regulations controlling the administration of blood alcohol tests. "Breath analyzers shall be operated strictly in accordance with the procedures set forth in 19 CSR 25–30.060." 19 CSR 25–30.011(5) (2001). Hurt's blood alcohol level was measured using a Data Master breath analyzer. When this type of ma-chine is used, the procedures set out in Form # 7 must be followed. 19 CSR 25–30.060(3).[4] The first item on the Data Master operational checklist states: "1. Subject observed for at least 15 minutes by _____. No smoking or oral intake of any material during this time; if vomiting occurs, start over with the 15 minute observation period." 19 CSR 25–30.060 (Form # 7) (2001).

The MDOH regulations contain no definition of what constitutes the prohibited "oral intake of any material during this time...." One purpose of the regulation, however, is to prohibit oral intake which can taint the blood alcohol test results. *Walker v. Director of Revenue*, 137 S.W.3d 444, 447 (Mo. banc 2004); *Farr v. Director of Revenue*, 914 S.W.2d 38, 40 (Mo.App. 1996). In *Hansen v. Director of Revenue*, 22 S.W.3d 770 (Mo.App.2000), the eastern district of this Court noted that "[t]he fifteen-minute observation requirement seeks to ensure the breathalyzer's accuracy by preventing smoking, vomiting, or oral intake of any type so that no driver's license suspension or revocation is based on false proof of intoxication." *Id.* at 773. In *Carr v. Director of Revenue*, 95 S.W.3d 121 (Mo.App.2002), the western district of this Court elaborated on that concern:

Drinking and driving experts are resolute that this fifteen minute waiting period plays a critical role to insure that the breathalyzer test achieves an accurate result. *See* 3 DONALD H. NICHOLS & FLEM K. WHITED III, DRINKING/DRIVING LITIGATION CRIMINAL AND CIVIL § 19:9 (2d ed. 1998) ("The arresting officer or Breathalyzer operator must continuously observe the subject during the fifteen to twenty minutes prior to the test. This waiting peri-

---

**4.** All references to state regulations are to the Code of State Regulations (2004) unless otherwise specified.

od is necessary to reduce interference from alcohol or other substance that may have been present in the mouth ... The presence of such compounds in the mouth at the time of breath collection will produce an extremely high breath alcohol value that is far from indicative of alveolar breath alcohol concentration."); 4 DAVID L. FAIGMAN ET AL., MODERN SCIENTIFIC EVIDENCE, § 33–2.3.2(c) (2002) ("Some foreign objects in the mouth, such as chewing tobacco, may trap alcohol and affect the breath test ... If the above are ruled out by observation, and the 15 minute waiting period is observed and documented, any interference with a valid test should not have occurred."); HARVEY M. COHEN & JOSEPH B. GREEN, APPREHENDING AND PROSECUTING THE DRUNK DRIVER § 7.04(11)(e) (2002) ("The defendant should be observed for 15 to 20 minutes prior to blowing into the breath-alcohol analyzer to ensure that he or she ingests nothing and brings nothing up from the stomach (by burp, belch, regurgitation, etc.), since these can affect the accuracy of the test.").

*Id.* at 129.

Here, the trial court believed that Hurt had chewing tobacco in his mouth throughout the 15–minute observation period. In *Duing v. Director of Revenue,* 59 S.W.3d 537 (Mo.App.2001), the driver testified that he had chewing tobacco in his mouth prior to being stopped by police. The tobacco remained in his mouth throughout the 15–minute observation period and was there when the breathalyzer test was conducted. The trial court believed the driver's testimony and gave the breathalyzer test results no weight. The court reasoned that the presence of tobacco in the driver's mouth at the time of the test violated the

prohibition against oral intake during the preceding 15 minutes mandated by 19 CSR 25–30.060. *Id.* at 538–39. On appeal, the eastern district of this Court appears to have agreed with the trial court that the presence of tobacco in the driver's mouth at the time of the test constituted prohibited "oral intake" that violated 19 CSR 25–30.060. *Id.* at 540.[5] The case was remanded, however, because the driver had not presented any evidence showing that the presence of the tobacco contaminated the blood alcohol test results. *Id.*

In *Middlemas v. Director of Revenue,* 159 S.W.3d 515 (Mo.App.2005), the driver testified that he had gum in his mouth when he was stopped by police. The gum remained there throughout the 15–minute observation period and during the test. The trial court believed the driver's testimony. The court decided the presence of the gum in the driver's mouth during the test, in violation of 19 CSR 25–30.060, contaminated the blood alcohol test results. *Id.* at 519. This Court implicitly agreed with the trial court's conclusion that the presence of the gum in the driver's mouth constituted prohibited oral intake in violation of the regulation. Relying on *Duing,* however, we held that the driver's rebuttal evidence was insufficient because he did not present any scientific or medical testimony tending to prove that his blood alcohol content would have been below the legal limit if he had been tested without the gum in his mouth. *Id.* at 521.

■ The decisions in *Duing* and *Middlemas* were based on the premise that, even if a driver proved there was prohibited oral intake during the 15–minute observation period, it was still the driver's obligation to prove how this violation of the regulation affected the validity of the blood alcohol test results. On this specific point,

---

5. One judge dissented from this holding.

both of these decisions were effectively overruled by *Coyle v. Director of Revenue,* 181 S.W.3d 62 (Mo. banc 2005). In *Coyle,* our Supreme Court held that 19 CSR 25–30.060 "creates a presumption that smoking, vomiting or oral intake of material during the 15–minute period invalidates the test results." *Id.* at 65.

Evidence, if believed by the court, that one of these events occurred during the 15 minutes prior to the test is sufficient to rebut the director's *prima facie* case without presentation of any additional evidence as to the specific effect of smoking, vomiting, or other oral intake of material on the blood alcohol results.

*Id.*

In the case at bar, the trial court found Hurt's blood alcohol test results were invalid because he had tobacco in his mouth when the test was conducted. Based upon *Coyle,* the trial court could rely upon the presumption of invalidity created by credible evidence of prohibited oral intake during the 15–minute observation period. *Id.* at 65. Hurt was under no obligation to adduce any additional evidence in order to rebut the Director's *prima facie* case.

The Director argues that 19 CSR 25–30.060 only applies if the driver first places something in his or her mouth during the 15–minute observation period, but the analysis in prior cases belies that assertion. For example, in *State v. Pike,* 162 S.W.3d 464 (Mo. banc 2005), Pike argued that the regulation was not followed because he was chewing gum at the time of the traffic stop, and the officer did not remember asking Pike whether he had something in his mouth prior to administering the test. *Id.* at 475. Our Supreme Court held that Pike failed to rebut the Director's *prima facie* case because: (1) Pike did not assert that he was still chewing gum during the observation period; and (2) the trial court made a factual finding that Pike no longer had anything visible in his mouth at the time of the test. *Id.* Similarly, in *Testerman v. Director of Revenue,* 31 S.W.3d 473 (Mo.App.2000), the trial court found that the driver had rebutted the Director's *prima facie* case by presenting evidence that she had placed a peppermint in her mouth after being stopped by police. *Id.* at 477. The western district of this Court held that the judgment was not supported by the evidence for the following reasons:

[T]he record favorable to the trial court's judgment would indicate that the respondent was stopped at 1:36 a.m., arrested at 1:46 a.m., asked for her consent to submit to a breathalyzer test at 1:58 a.m., and given the breathalyzer test at 2:17 a.m. At best, when viewed in a light most favorable to the respondent, the evidence would support the fact that sometime between 1:46 and 1:58 a.m. the respondent placed a peppermint in her mouth and that it was still there at 1:58 a.m., when Officer Bonner asked her whether she would consent to taking a breathalyzer test. However, without engaging in pure speculation, there is no way to determine whether the mint was still in her mouth during the observation period, 2:02 a.m. to 2:17 a.m. The respondent did not testify that the mint was still in her mouth during this time nor did she testify as to basic underlying facts which would have allowed the trial court to reasonably infer that it was still there, such as how big the mint was or the average time it took her to finish one. Thus, in concluding that the Director's *prima facie* case for suspension under § 302.505.1 had been rebutted by the fact that the respondent had a peppermint in her mouth during the observation period, the trial court clearly had to resort to an inference that was unrea-

sonable in that it relied on speculation, which it could not do.

*Id.* at 483. Accepting the Director's argument would lead to at least two anomalous conclusions. First, an officer who observed a driver place something in his mouth during the observation period would be required to have the object removed and restart the time period. No similar action would be required of an officer who simply observed a driver with something in his mouth when the observation period started.[6] Second, a driver who presented credible proof that he placed chewing tobacco in his mouth during the observation period could rebut the Director's *prima facie* case by simply relying on the presumption of invalidity articulated in *Coyle.* In contrast, a driver who presented credible proof that he had chewing tobacco in his mouth throughout the observation period would be deprived of that presumption's benefit and would be required to present additional evidence about the specific effect of tobacco on the blood test results. Treating these two situations the same way would promote the regulation's purpose of preventing a driver from having something in his mouth at the time of the blood alcohol test that could taint the results. Point IV is denied.

The remainder of the Director's points require only brief discussion. In Point I, the Director contends that the trial court erred in sustaining Hurt's hearsay and foundational objections to Exhibit A. After reviewing the record, this Court cannot locate any such ruling. At the beginning of the trial, Exhibit A was offered in evidence. Hurt's counsel made a general objection on the grounds of hearsay and foundation. Exhibit A was admitted "sub-ject to" those objections, and the records in Exhibit A were thoroughly discussed by the witnesses during their testimony. There is nothing in the record or the Director's brief that persuades us the trial court actually refused to consider any portion of Exhibit A. Point denied. Points II and III deal with the trial court's ruling on probable cause. The issues raised are moot in light of this Court's disposition of Point IV.

The judgment of the trial court is affirmed.

BARNEY, J., and SCOTT, P.J., Concur.

---

6. In that regard, this Court's recent decision in *Smith v. Director of Revenue,* 260 S.W.3d 896 (Mo.App.2008), is instructive. There, the driver was observed with chewing tobacco in his mouth at the scene. He was asked to remove it. Upon arrival at the police station, he was instructed to rinse his mouth out with water three times. The officer then visually inspected the driver's mouth to verify that no tobacco remained inside. *Id.* at 899.