Anthony Dewayne COLLINS,
Respondent,

v.

DIRECTOR OF REVENUE, State
of Missouri, Appellant.

No. WD 75214.

Missouri Court of Appeals,
Western District.

May 7, 2013.

John H. Edmiston, Warrensburg, MO,
for Respondent.

Chris Koster, Attorney General, James A. Chenault, III, and Rachel Michelle Jones, Special Assistant Attorneys General, Jefferson City, MO, for Appellant.

Before Division Two: ALOK AHUJA, Presiding Judge, and KAREN KING MITCHELL and GARY D. WITT, Judges.

KAREN KING MITCHELL, Judge.

The Director of Revenue appeals the trial court's reinstatement of Anthony Collins's driver's license, following a prior administrative suspension for driving with an excessive blood alcohol content (BAC). Director argues that the trial court erred in finding Collins's BAC results inadmissible in that: (1) Collins failed to lodge a timely and specific objection to the foundation for admission of the BAC results; and (2) once the BAC results were in evidence, Director was entitled to a presumption of validity that Collins failed to rebut. We reverse and remand.

## Factual Background

On November 13, 2010, Deputy Larry Lehman of the Pettis County Sheriff's Department, along with Corporal Ryan Smith of the Missouri State Highway Patrol, conducted a traffic stop and investigation of Collins, following a report that Collins had recently been involved in a fight at a local bar. When Deputy Lehman approached Collins's vehicle to request his driver's license, Deputy Lehman noticed an odor of alcohol and that Collins's eyes were watery. Corporal Smith also noticed an odor of intoxicants coming from Collins's vehicle[1] and that Collins's eyes were bloodshot. Corporal Smith asked Collins how much he had to drink that evening, and Collins responded that he had "three or four beers." Corporal Smith then asked Collins to exit his vehicle and participate in some field sobriety tests. Collins complied.

On the horizontal gaze nystagmus test, Collins demonstrated four of six possible clues of intoxication. During the walk-and-turn test, Collins failed to maintain a heel-to-toe stance, he began the test before being instructed to do so, he stepped off the line, he took an incorrect number of steps, he failed to count his steps out loud, and he used his arms for balance; all of these were clues indicating intoxication. Corporal Smith also administered a portable breath test that revealed the presence of alcohol in Collins's system. Corporal Smith then placed Collins under arrest for suspicion of driving while intoxicated and transported him to the Pettis County Jail.

At the jail, Corporal Smith advised Collins of both the *Miranda* warnings and Missouri's Implied Consent Law. Collins agreed to provide a breath sample. Corporal Smith observed Collins for a fifteen-minute time period, with the exception of a brief six-to-ten-second departure when Corporal Smith turned his back on Collins and walked into an adjacent room to retrieve Collins's license. Corporal Smith did not observe Collins smoke, vomit, or have any oral intake while Corporal Smith was in the room, and, upon his return to the room, Corporal Smith saw no evidence that any of those things had occurred during his brief absence. Collins then submitted to the breath test, which revealed a blood alcohol content of .120%.

Director administratively suspended Collins's license for driving with an excessive BAC, and Collins sought a trial de novo. At trial, the court received testimony from Deputy Lehman, Corporal Smith, and Trooper Mark Degraffenreid. Corporal Smith acknowledged leaving the room

---

1. There were two other occupants in the vehicle that Collins was driving.

for six to ten seconds, during which he could not see Collins.

After Corporal Smith testified regarding the results of the BAC test, Director sought to introduce Exhibit A, which contained the Alcohol Influence Report and results of the breath test. Collins objected, arguing, "Judge, I understand that by statute these are to come in, but I—I do object to the Court's consideration of numerous matters in the report, items that are not testified to, items that lack foundation...." The court interrupted, acknowledging that it could not consider double hearsay contained within the report. The court also stated, "[n]ow foundation, you know, I can look and see what's double hearsay in there and ignore it, but if you can tell me what foundation problems specifically you have." Collins argued that the results of the portable breath test lacked foundation, and that, "with the rest of the Corporal's testimony ... I think the court could probably consider that, other than like the hearsay or hearsay matters ... and any other things [the court found to be] inappropriate." The Director responded that she agreed that the portable breath test results and the double hearsay should be excluded, but stated, "if it's anything else that you decide to keep out, I wish to make an offer of proof of it for the record, since I don't know what that could be." The court agreed not to consider either the results of the portable breath test or any double hearsay, but indicated, "it's probably better if I have a specific objection to anything else." Collins made no further objection, and the court did not indicate whether the exhibit was admitted, but the court did ask Corporal Smith whether Collins had any health complaints, and Corporal Smith acknowledged that Collins suffered from acid reflux and required daily medication.

Director then solicited evidence from Corporal Smith that Collins had already taken his medication the day of the breath test and that Collins never made any complaints to Corporal Smith about the acid reflux that day. Corporal Smith further testified that he never observed Collins make any "funny actions, as though he might be belching or vomiting...."

On cross-examination, Corporal Smith acknowledged that acid reflux can cause belching and that belching was something he should be looking for during the fifteen-minute observation period. Corporal Smith also acknowledged that the Code of State Regulations required that, if he lost sight of Collins at any point during the fifteen minutes, he would have to restart the observation period. Corporal Smith agreed that he did not follow the regulations when he left the room and that he did not know what could or could not have happened during the time he was absent from the room.

On redirect, Corporal Smith indicated that the breath test machine did not give any interference or error codes. Director then called Trooper Degraffenreid to testify regarding the maintenance and proper functioning of the DataMaster machine used to obtain Collins's BAC. Trooper Degraffenreid testified that the DataMaster is designed to abort a breath test and indicate "invalid sample" if mouth alcohol is detected.

On cross-examination, Trooper Degraffenreid acknowledged that the regulations, specifically 19 CSR § 25-30.011, require "strict" compliance. Trooper Degraffenreid also acknowledged that belching could result in the presence of mouth alcohol. But he further testified that, if mouth alcohol was present, the machine would indicate that the sample was invalid. He also indicated, however, that compliance with the regulations would require the observa-

tion period to restart if the subject belched or vomited.

During closing arguments, Director argued that, even though the fifteen-minute observation period had not been strictly complied with, the deviation was negligible and that there was no evidence that anything occurred during Corporal Smith's absence that would have affected the accuracy of the test results. Collins directed the court to the Southern District's opinion in *Hilkemeyer v. Director of Revenue*,[2] for the proposition that the driver has no obligation to prove that anything actually occurred during the fifteen-minute observation period that would have affected the accuracy of the test results.

The court issued its judgment, finding the breath test results inadmissible due to a lack of foundation based upon Corporal Smith's failure to strictly comply with the fifteen-minute observation period, and reinstating Collins's driver's license. Director appeals.

### Standard of Review

■ "As in any court-tried civil case, in a driver's license suspension case, this Court must affirm the trial court's judgment 'unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.'" *Harvey v. Dir. of Revenue*, 371 S.W.3d 824, 826 (Mo.App. W.D.2012) (en banc) (quoting *Zahner v. Dir. of Revenue*, 348 S.W.3d 97, 100 (Mo. App. W.D.2011)). "'We view the evidence in the light most favorable to the judgment and where the facts relevant to an issue are contested, deference is given to the circuit court's assessment of that evi-

dence.'" *Id.* (quoting *Bieker v. Dir. of Revenue*, 345 S.W.3d 254, 255–56 (Mo.App. S.D.2010)).

### Analysis

In Director's first point, he argues that the trial court erred in finding—absent a timely, specific objection by Collins—that evidence regarding Collins's BAC test results was inadmissible.[3] In his second point, Director argues that once evidence of Collins's BAC was in evidence, Director was entitled to a statutory presumption of validity of the BAC evidence and that the burden then shifted to Collins to present evidence demonstrating invalidity of the test results. We agree with Director's first point, in part, but we reject his second point.

#### A. Admissibility of BAC test results

■ Evidence regarding Collins's BAC was presented in two ways at trial: first, through Corporal Smith's testimony; and second, through Director's Exhibit A. Corporal Smith's testimony was admitted without objection. When Director's Exhibit A was introduced, Collins offered a vague foundational objection, but—despite the court's invitation to do so—failed to specify the grounds for the objection. The court did not immediately rule on admissibility of Exhibit A. In its judgment, the court found that "[b]y leaving Petitioner alone and unobserved in the breath test room within the 15 minutes prior to the test, the Trooper failed to follow proper operating procedures for breath analyzers in accordance with 19 CSR 25–30.060." The court then concluded that "[a]s a result of the Trooper's deficiency in following ap-

---

2. 353 S.W.3d 62 (Mo.App. S.D.2011).

3. At the time of the hearing, the Director was a woman. The current Director is now a man. Because the current Director is automatically substituted as a party for the previous Director, we refer to the Director at the time of the hearing in the feminine, and the Director at the time of this appeal in the masculine.

propriate state regulations relating to the operation of breath analyzers, there was an insufficient foundation for the admission of the breath test." The judgment did not distinguish between the Corporal's testimony and Director's Exhibit A.

In *Krieger v. Director of Revenue*, 14 S.W.3d 697, 700 (Mo.App. E.D.2000), the testing officer testified, without objection, to the results of the driver's BAC test. After identifying an exhibit purporting to be the BAC verifier receipt, the officer was again asked what the results of the test were. *Id.* At that point, the driver's attorney objected, noting, "there is no foundation for the report, that it was done in accordance with regulations that were applicable at the time that the arrest was made." *Id.* The court overruled the objection, but, in its subsequent judgment, the court altered its ruling and denied admission of the BAC results into evidence, finding that there were " 'inconsistencies' in the testimony of Director's witnesses regarding" the fifteen-minute observation period. *Id.*

On appeal, Director argued that the trial court erred in setting aside Director's revocation in that the driver failed to make a timely and proper objection to admission of the BAC results in evidence. *Id.* at 701. The Eastern District agreed. The court held that "[t]he requirement of proof of compliance with the regulation ... becomes an issue ... [only] if a proper, timely objection is made to the admission of the blood alcohol analysis." *Id.* "An objection encompassing a broad range of

situations that are not readily apparent does not preserve error." *Id.* at 701–02. The court determined that "[a]n objection as to lack of foundation for [the officer's] testimony as to the breath test result should have been made at that time." *Id.* at 702.

In examining the objection that was raised, the court determined that it "was broad and theoretically encompassed any number of unspecified foundational grounds[, and s]uch an objection is not sufficient to deny the admissibility of the evidence." *Id.* The court held that the "[d]river's failure to make a proper objection was the equivalent of making no objection, and as such, the breath test result should have been admitted, even if it could have been excluded by a proper objection." *Id.*

Here, the court appears to have deferred ruling on the admissibility of Director's Exhibit A until after trial. And while Collins's objection to the exhibit was equally as vague as the driver's objection in *Krieger*, we find this fact irrelevant in light of the facts that (1) the court deferred ruling on admissibility of Director's Exhibit A, and (2) Collins's entire case revolved around Corporal Smith's failure to strictly adhere to the requirements of the fifteen-minute observation period. Thus, Collins's claim of foundational deficiency was sufficiently clear to permit the trial court's ruling on Director's Exhibit A, even if the original objection to its admission was not.[4]

---

4. The trial court correctly determined that the BAC results contained in Director's Exhibit A were inadmissible insofar as Director failed to demonstrate that the fifteen-minute observation period required by 19 CSR 25–30.060 (2010) was strictly complied with. *See, e.g., Hilkemeyer v. Dir. of Revenue*, 353 S.W.3d 62, 67 (Mo.App. S.D.2011). The version of 19 CSR 25–30.060 in effect at the time required, in part, the following: the "[s]ubject was observed for at least 15 minutes by [a named person]. No smoking or oral intake of any material during this time; if vomiting occurs, start over with the 15 minute observation period." The regulations were amended, however, effective December 1, 2012, to define "observation period" and now provide that "[d]irect observation is not necessary to

Corporal Smith's testimony, on the other hand, was admitted entirely without objection. While we agree with the trial court's ultimate determination that the BAC results lacked sufficient foundation due to noncompliance with the fifteen-minute observation period, the court had already admitted Corporal Smith's testimony on the subject without any objection. Consequently, this evidence could not later be excluded.[5] *See Riley v. Dir. of Revenue*, 378 S.W.3d 432, 442–43 (Mo.App. W.D. 2012) ("The failure to follow the foundational procedural requirements of sections 577.020 to 577.041 does not render the BAC toxicology report *incompetent*. It merely renders the test *inadmissible* upon proper objection."); *see also Reinert v. Dir. of Revenue*, 894 S.W.2d 162, 164 (Mo. banc 1995) (holding that "the foundational prerequisites are unnecessary where the test result is admitted in evidence without objection. When evidence of one of the issues in the case is admitted without objection, the party against whom it is offered waives any objection to the evidence, and it may be properly considered even if the evidence would have been excluded upon a proper objection."), *overruled on other grounds by White v. Dir. of Revenue*, 321 S.W.3d 298 (Mo. banc 2010). Thus, we agree with Director's argument in his first point on appeal, but only as it relates to Corporal Smith's testimony about Collins's BAC results. We disagree, however, with his conclusion as to the effect of this evidence.

## B. Effect of the presumption in section 577.037.1 [6]

■ Director argues that, once evidence of Collins's BAC was admitted into evidence, the presumption of intoxication found in section 577.037.1 operated to create a presumption of validity of the BAC evidence, thus shifting the burden of production to Collins to present evidence demonstrating invalidity of the result. We disagree.

First, Director misconstrues the meaning of the presumption supplied in section 577.037.1. Section 577.037.1 provides, in pertinent part:

[I]n any license suspension or revocation proceeding pursuant to the provisions of chapter 302, RSMo, arising out of acts alleged to have been committed by any person while driving a motor vehicle while in an intoxicated condition, the amount of alcohol in the person's blood at the time of the act alleged as shown by any chemical analysis of the person's ... breath ... is admissible in evidence.... *If there was eight-hundredths of one percent or more by weight of alcohol in the person's blood, this shall be prima facie evidence that the person was intoxicated at the time the specimen was taken.*

§ 577.037.1 (emphasis added).

Contrary to Director's assertion, this provision does not create a presumption of validity of BAC results once they are in evidence; rather, it provides an alternate means of proving the element of "intoxicat-

ensure the validity or accuracy of the test result...." 19 CSR 25–30.011(2)(H) (2012). Under the current version, the operator need only "remain close enough to a subject to reasonably ensure, using the senses of sight, hearing, or smell, that a test subject does not smoke, vomit, or have any oral intake during the fifteen- (15-) minute observation period." *Id.*

5. As discussed, *infra*, though the trial court could not exclude the evidence in the absence of an objection, the court was free to determine that, as a result of the failure to strictly adhere to the fifteen-minute observation period, the evidence was not credible.

6. All statutory references are to RSMo Cum. Supp.2011, unless otherwise noted.

ed condition" of driving while intoxicated under section 577.010.1. *See State v. Hoy,* 219 S.W.3d 796, 802 n. 4 (Mo.App. S.D. 2007) ("Many driving-while-intoxicated cases involving alcohol do not require an analysis of the three components comprising the 'intoxicated condition' element of the offense because of the presumption of intoxication created by § 577.037.1 . . . .").

Second, even if Director's interpretation were correct, it would not have aided him in the underlying case. Section 577.037.4 provides that before BAC results can "give rise to the presumption . . . provided for in subsection 1 of this section, [the test] shall have been performed . . . in accordance with methods and standards approved by the state department of health and senior services." Though the results may have been *admissible* in the absence of an objection despite the foundational deficiencies, those same deficiencies preclude the operation of any resulting presumption, regardless of whether Collins lodged a sufficient objection.[7]

And finally, we reject Director's argument for the reason that it is nothing more than an attempt to revert to the improper standard applied to driver's license revocation and suspension cases before the Missouri Supreme Court decided *White v. Director of Revenue.* Before *White,* in license revocation and suspension cases, reviewing courts gave "the director's uncontroverted evidence a presumption of validity and . . . require[d] the driver to present evidence to rebut that presumption of validity." 321 S.W.3d at 306. In *White,* however, the Court recog-

nized that this presumption afforded to Director was contrary to statute: "No provision in section 302.535 creates a presumption that the director's evidence establishing a prima facie case is true or shifts the burden to the driver to produce evidence to rebut such presumption." *Id.* The Court held that the plain language of section 302.535.1 placed the burdens of both production and persuasion on the director. *Id.* at 306–07. The Court determined that prior case law "fail[ed] to follow the legislative mandate of section 302.535.1 to place the burden of proof, including the burden of production of evidence, on the director and to apply the rules of civil procedure." *Id.* at 307.

Here, Director seeks to invoke the same presumption rejected by the Court in *White,* but now claims that the presumption arises from the language of section 577.037.1. We disagree. "Under *White,* there is [simply] no presumption that the Director's evidence establishing a *prima facie* case is true, and there is no burden shifted to the driver to produce evidence to rebut such a presumption." *Harvey,* 371 S.W.3d at 829. As the Court noted in *White,* the plain language of section 302.535.1 places the burdens of both production and persuasion on the director.[8] The presumption provided in section 577.037.1 does not alter the requirements of section 302.535.1.

As discussed above, the purpose of the presumption in section 577.037.1 is to provide an alternate means for proving the "intoxicated condition" element of driving while intoxicated. This presumption sim-

---

7. Although *Riley* indicated that the failure to comply with regulations did not render BAC results *incompetent,* it merely rendered them *inadmissible* upon proper objection, 378 S.W.3d 432, 443 (Mo.App. W.D.2012), compliance *is* required to invoke the presumption, as there is no opportunity to object to a presumption; the only action an opponent could take would be to identify non-compliance with the regulations and, therefore, prevent the presumption from ever arising.

8. Section 302.535.1 states: "The burden of proof shall be on the state to adduce the evidence."

ply serves no purpose for Director in license revocation and suspension cases. In such cases, Director must prove "that the person was arrested upon probable cause to believe such person was driving a motor vehicle *while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight....*" § 302.505.1 (emphasis added). Thus, the elements Director must prove are: (1) that the officer had probable cause for the arrest, and (2) that the driver's BAC was .08% or higher. As demonstrating BAC is a necessary element of Director's case, Director has no use for the presumption outlined in section 577.037.1. Unlike Director's burden in revocation and suspension cases, if the State prosecutes an individual for driving while intoxicated pursuant to section 577.010.1, the State need not establish and prove that the individual had a BAC of .08 or higher; the State need only demonstrate that the person "operate[d] a motor vehicle while in an intoxicated or drugged condition." § 577.010.1. The presumption in section 577.037.1 is available as a tool for the State to use to prove the element of "intoxicated condition" if the State has credible evidence of excessive BAC.[9] But because Director is not required to prove "intoxicated condition," Director has no need for the presumption.

In short, the presumption of intoxication in section 577.037.1 does not alter Director's burdens of production and persuasion established in section 302.535.1.

Director's second point is denied.

## C.  Effect of the BAC evidence

■  Although we believe that the trial court's rationale in excluding evidence of

the BAC results was sound, the fact of the matter is that the trial court did not have the option of excluding Corporal Smith's testimony as to the BAC results in the absence of an objection by Collins. And, because we reject Director's interpretation of the effect of the BAC results in evidence, the question arises as to what effect, if any, is to be given to the BAC evidence in the face of uncontested evidence of non-compliance with the fifteen-minute observation period.

Once Collins's BAC results were in evidence, the court was free to accept or reject them, as with any other evidence presented at trial. *White*, 321 S.W.3d at 308 ("When evidence is contested by disputing a fact in any manner, ... [a] trial court is free to disbelieve any, all, or none of that evidence."). Here, Collins plainly contested the validity of the BAC results based upon Corporal Smith's brief absence from the room during the fifteen-minute observation period. And Director, in accordance with her burden, introduced evidence from which the trial court could have determined that the BAC results were valid, despite the regulatory violation. It was then up to the trial court to determine what credit, if any, to give to Corporal Smith's testimony regarding the BAC test results.

Where there are no findings of fact or conclusions of law, we assume that the evidence was "found in accordance with the result reached." Rule 73.01(c).[10] But here, the trial court *did* issue findings and conclusions. And the trial court concluded that the BAC evidence was inadmissible. Consequently, it never evaluated the credibility of that evidence. Thus, a remand is

---

**9.** In such cases, the State could opt, of course, to simply charge the individual with the crime of driving with excessive blood alcohol content under section 577.012.

**10.** All rule references are to Missouri Supreme Court Rules (2012), unless otherwise noted.

necessary to allow the trial court the opportunity to evaluate whether the Director met the burden of demonstrating that the BAC results are nevertheless credible, despite the regulatory violation.

## Conclusion

The trial court was not at liberty to exclude Corporal Smith's testimony as to Collins's BAC test results in light of the fact that Collins never objected to this evidence. Once the evidence was in, the court was free to accept or reject it and was not bound by any presumptions in favor of or against the validity of the evidence. Because the trial court erroneously excluded the evidence, it never evaluated the credibility of the evidence. Thus, we reverse the trial court's judgment and remand for the court to determine the credibility of the BAC evidence and the weight to be given it, and for entry of such judgment as the court deems proper.

ALOK AHUJA, Presiding Judge, concurs.

GARY D. WITT, Judge, concurs in separate opinion.

GARY D. WITT, Judge.

I concur in the result and analysis of the Majority opinion. I write separately to emphasize the importance of the fifteen-minute observation period in reaching a scientifically reliable result on the breathalyzer test and to suggest that it may be time for the Missouri breath alcohol testing program protocols to be updated to comply with the standards in the industry.

The breathalyzer test is a scientific instrument designed to produce as accurate of a result as possible when used properly. As with any scientific instrument, there are necessary protocols for its proper operation. One critical protocol necessitated in the manufacturer's instructions is the observation period.[1] As this court has recognized:

Drinking and driving experts are resolute that this fifteen minute waiting period plays a critical role to insure that the breathalyzer test achieves an accurate result. See 3 DONALD H. NICHOLS & FLEM K. WHITED III, DRINKING/DRIVING LITIGATION CRIMINAL AND CIVIL § 19:9 (2d ed.1998) ("The arresting officer or Breathalyzer operator must continuously observe the subject during the fifteen to twenty minutes prior to the test. This waiting period is necessary to reduce interference from alcohol or other substance that may have been present in the mouth ... The presence of such compounds in the mouth at the time of breath collection will produce an extremely high breath alcohol value that is far from indicative of alveolar breath alcohol concentration."); 4 DAVID L. FAIGMAN ET AL., MODERN SCIENTIFIC EVIDENCE, § 33–2.3.2(c) (2002) ("Some foreign objects in the mouth, such as chewing tobacco, may trap alcohol and affect the breath test ... If the above are ruled out by observation, and the 15 minute waiting period is observed and documented, any interference with a valid test should not have occurred."); HARVEY M. COHEN & JOSEPH B. GREEN, APPREHENDING AND PROSECUTING THE DRUNK DRIVER § 7.04(11)(e) (2002) ("The defendant should be observed for 15 to 20 minutes prior to blowing into the breath-alcohol analyzer to ensure that he or she ingests nothing and brings nothing up from the

1. Forty-nine states and the District of Columbia require at least a fifteen-minute observation period. South Dakota does not have an observation period because the state does not have a breath testing program and relies solely on the Preliminary Breath Test (PBT).

stomach (by burp, belch, regurgitation, etc.), since these can affect the accuracy of the test.").

*Carr v. Dir. of Revenue*, 95 S.W.3d 121, 129 (Mo.App. W.D.2002). *See also Hurt v. Dir. of Revenue*, 291 S.W.3d 251 (Mo.App. S.D.2009).

While the BAC DataMaster, which was the machine used in this case, has a mechanism that is designed to detect mouth alcohol, one study has shown that this mechanism failed as much as 48 percent of the time in a controlled laboratory setting. Simpson, C.D., Kerby, J.A. and Kerby, S.E., *Effects of Mouth Alcohol on Breath Alcohol Results*, INT'L J. OF DRUG TESTING, Vol. 3(1) (2007). So, as the Majority has recognized, even if the results of a breathalyzer test may be admissible, as with any scientific test, it is still the job of the finder of fact to determine the test result's credibility or reliability. One factor in that credibility or reliability determination is proper compliance with the observation period and the other protocols for the proper operation of the machine.

In order to avoid inaccurate results caused by mouth alcohol, most states have adopted protocols that require—after the mandatory observation period—that a suspected intoxicated driver be offered two separate breathalyzer tests.[2] If the results of those two tests vary outside of a recognized parameter, a third confirmatory test is given to determine which of the first two test results is the more reliable and which may have been tainted by mouth alcohol. Many states have also put an affirmative duty on the law enforcement officer who is operating the breathalyzer to physically check the suspect's mouth for foreign matter that may trap alcohol and affect the validity of the test prior to the beginning of the observation period. The National Safety Council's Committee on Alcohol and Other Drugs has made recommendations for "Acceptable Practices for Evidential Breath Alcohol Testing." The Council set forth the following ten recommendations "necessary for establishing reliable evidential breath alcohol test performance":

1. Instruments should be operated, and tests administered by, trained and qualified breath alcohol test instrument operators.

2. Instruments should be approved by an appropriate agency and, if used in the United States, also appear on the National Highway Traffic Safety Administration's Conforming Products List.

3. Testing protocols should employ a *minimum pre-exhalation mouth alcohol deprivation period of 15 minutes.*

*4. Breath alcohol measurements should be conducted on at least duplicate independently exhaled end-expiratory breath samples; the breath sample results should agree within the applicable established and documented criteria.*

5. *At least one control analysis should be performed as a part of each subject test* sequence as an assessment of within-run accuracy and/or verification of calibration.[3]

2. Thirty-two states and the District of Columbia have adopted duplicative confirmatory testing: Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Idaho, Maine, Maryland, Massachusetts, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, North Dakota, Ohio (use of second sample depends on instrument), Okla-homa, Oregon, Pennsylvania, Rhode Island, Texas, Tennessee, Virginia, Washington, Washington DC, Wisconsin, and Wyoming.

3. Thirty-seven states and the District of Columbia require a controlled sample or known solution be used to ensure that the machine is in proper working order before each individual driver is tested: Alabama, Alaska, Arizona,

a. Controls should consist of either wet bath simulator ethanol vapor or dry gas ethanol standard.

b. Predetermined and documented acceptable control results should be established.

c. Control results found to be unacceptable during a test sequence should require the performance of a complete new test sequence or result in disabling the breath alcohol test instrument until it is inspected by appropriately trained personnel.

6. An ambient air blank/analysis should be performed before and after each breath and control sample analytical measurement.

7. *Any non-compliance or non-conformity with established and documented evidential test sequence protocol criteria should require the performance of a complete new evidential test sequence.*

8. Printouts of all completed tests should show the results of all breath samples, ambient air analyses/blanks and control analyses performed during a subject test sequence.

a. Jurisdictions may choose to report a reduced or statistically adjusted result in addition to the actual analytical results.

b. The date of analysis, instrument serial number and all measurement times should appear on the printout.

c. Any error messages generated during the test sequence should appear on the printout.

d. If a test is invalid, the reason for the invalidity should appear on the printout.

9. Periodic calibration, verification of calibration and/or certification of instruments must be performed in conformance with the documented and approved protocol recognized by the applicable jurisdiction.

10. Periodic recertification of breath test instrument operators should be done in compliance with documented and established training criteria recognized by the applicable jurisdiction at least every five years.[4]

National Safety Council Committee on Alcohol and Other Drugs, Report of the Subcommittee on Alcohol: Technology, Pharmacology, and Toxicology, *Acceptable Practices for Evidential Breath Alcohol Testing*, Feb. 18, 2008 (Internal citations omitted. Emphases added).[5]

Missouri has failed to adopt many of these protocols that assist in ensuring the scientific reliability or credibility of the

---

Arkansas, California, Colorado, Connecticut, Florida, Idaho, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio (instrument dependent), Oklahoma, Oregon, Pennsylvania, South Carolina, Texas, Vermont, Virginia, Washington, Washington DC, West Virginia, Wisconsin, and Wyoming. Missouri, along with ten other states, only require that a controlled or known sample be used when the machine is maintained. In Missouri, the machines are maintained every thirty-five days. (Footnote added by author, not included in original).

4. In Missouri, for a breathalyzer test operator to renew his/her permit, all that is required is that the operator have performed ten tests on drinking subjects in the year prior to renewal. 19 CSR 25–30.041. (Footnote added by author, not included in original).

5. http://www.nsc.org/get_involved/divisions/Documents/ACCEPTABLE% 20PRACTICES% 20FOR% 20EVIDENTIAL% 20BREATH% 20ALCOHOL% 20TESTING.pdf (last visited April 22, 2013).

test results.[6] The Director argues in this case that the test results obtained following the Missouri testing protocols should be subject to a presumption of validity. The Majority accurately points out that this argument fails based on the statute, but the State's argument also fails based on the science. I write separately to suggest that it may be time for the Missouri breath alcohol testing program protocols to be updated to comply with the standards in the industry. As the National Safety Council stated, "The significant weight assigned to breath alcohol results, along with the serious consequences arising from conviction on an impaired driving offense require evidential breath alcohol testing programs to implement appropriate quality assurance measures." *Id.* In the meantime, the reliability of and weight to be given to breathalyzer test results in Missouri clearly remains an issue for the finder of fact.

6. As the Majority points out in footnote 4, the Missouri Department of Health has recently amended 19 CSR 25–30.011(2)(H) (2012). The amendment appears to weaken rather than strengthen the scientific reliability of the test results obtained pursuant thereto.