See also Mo.App., 558 S.W.2d 233; 558 S.W.2d 246.

**STATE of Missouri, Respondent,**

**v.**

**Bradford R. JONES, Appellant.**

**KCD No. 28667.**

Missouri Court of Appeals, Kansas City District.

Aug. 29, 1977.

Motion for Rehearing and/or Transfer Denied Oct. 12, 1977.

Application to Transfer Denied Nov. 14, 1977.

Roy W. Brown, John A. Wilson, Kansas City, for appellant.

John C. Ashcroft, Atty. Gen., J. Michael Davis, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Bradford R. Jones was found guilty on a jury trial of robbery in the first degree with a deadly weapon. Acting under the second offender law, the trial court fixed his punishment at 20 years' imprisonment. Jones has appealed from the judgment and sentence so imposed.

At around 10:30 P.M., February 13, 1975, two men carrying guns and wearing bandana masks over their faces entered the Hen House Market at 95th and Blue Ridge in Kansas City. They pointed the guns at Dennis Kurtz, a Hen House employee, and ordered him to open the cash registers. He did so and the robbers removed the cash from the registers. According to Kurtz, about $100 was taken. The robbers directed Kurtz and another Hen House employee to lie on the floor and the robbers then fled. Police were called and the scene of the offense was processed for fingerprints with negative results.

On March 28, Bradford R. Jones, Gerald Miller and Miller's wife were arrested at the Miller residence. Police interrogation of Miller and Jones followed as detailed in the case of *State v. Jones*, No. 28,583, Mo. App., 558 S.W.2d 233, decided contemporaneously with this case. Miller's statement admitted that he and Jones carried out the Hen House robbery.

Jones was indicted for the offense. On the day of trial, the state substituted an information for the indictment. The information added the charge of a prior conviction in Kansas in order to invoke the second offender act. At a pretrial hearing the court found the second offender law applicable.

At Jones's trial, the Hen House employees testified, but neither could identify either Jones or Miller as the robbers. Miller testified to the carrying out of the robbery. Detective VanBuskirk testified that Jones had stated that Miller's statement which VanBuskirk reduced to writing was true.

No evidence was offered by the defendant.

The jury returned a verdict of guilty and the trial court fixed punishment at 20 years' imprisonment and entered judgment and sentence accordingly.

In this court, appellant has repeated verbatim the objection and argument made in *State v. Jones*, No. 28,583, to the trial court's overruling of his motion to suppress the use in evidence of his statement to VanBuskirk. A single hearing was held on the motion to suppress. The evidence so presented has been detailed in No. 28,583. What was there said is dispositive of the complaint here voiced.

Appellant's second assignment of error also employs the identical argument found on the second point in No. 28,583—the complaint of the state's use of evidence of other offenses. Here appellant complains of evidence of his possession and use of narcotics, the theft of an auto for use in the Hen House robbery, and the numerous offenses with which Miller was charged, which appellant contends were inferentially charged to him also. In addition to the reasons for rejecting the assignment of error in No. 28,583, the assignment here is without merit for the further reason that there was no objection to Miller's testimony about the car theft nor to his testimony that "we were coming off of heroin" at the time of his arrest. Furthermore, appellant's cross-examination of VanBuskirk went into at length appellant's withdrawal symptoms at the time of his interrogation. For this reason as well as those stated in No. 28,583, this assignment of error is without merit.

Appellant's third assignment of error relates to VanBuskirk's reading of the excerpts from Miller's statement dealing with the Hen House robbery. Again the same argument is advanced as was rejected in No. 28,583 and what was said there is dispositive of the objection here.

The fourth assignment of error is based on statements of the prosecutor in his argument to the jury. Again, as in No. 28,583, the complaint raised is that the prosecutor commented upon the failure of the defendant to testify. The remarks objected to at trial on that ground were: "Now there is no evidence to the contrary that Brad Jones was not with [Miller]. Now the only evidence in the case * * * ." At this point, defense counsel objected and the objection was overruled. The prosecutor continued:

"As I said, there is not one shred of evidence in his case that Bradford Jones was anywhere but the Hen House when it was robbed. There is not one shred of evidence in this case that indicates anything other than the robbery takes place on February 13th. There has been no witnesses testified about that, that it took place on any other date or there has been no other robbery at that place."

Again, as with the points previously considered, the argument here advanced is identical with that made by appellant in No. 28,583. What was said there answers the complaint now considered. There was no direct reference to appellant's failure to testify and the trial court's ruling was not error.

■ Appellant's next assignment of error is based on the overruling of his oral motion to disqualify the judge. As above noted, on the day that the case came on for trial the state was permitted over his objection to substitute an information for the indictment against appellant. The only change was to allege a Kansas conviction which would make the second offender act applicable.

Defense counsel then moved orally to disqualify the judge on the grounds that because the judge had presided at the trial of No. 28,583, "the Court would have judicial knowledge of matters that would cause him to be prejudiced against this defendant * * * ." The motion was overruled. Inasmuch as the motion was neither in writing nor supported by affidavit as required by Rule 30.12, the trial court's action was not error. *State v. Thost*, 328 S.W.2d 36, 39[5] (Mo.1959); *State v. Johnson*, 522 S.W.2d 106, 110–111[7–8] (Mo.App.1975).

■ Appellant next contends that the trial court failed to make specific findings calling for the application of the second offender act. § 556.280, RSMo 1969. The only ground of error relating to the second offender act found in appellant's motion for new trial was that the evidence of the previous offense was erroneously admitted

for various reasons. The objection here raised has not been preserved for appellate review.

Appellant next contends that the trial court made prejudicial remarks to defense counsel during the cross-examination of Miller. Counsel cross-examined Miller concerning the arrangement with Missouri officials whereby numerous charges were dropped in return for Miller's agreement to testify against appellant. Miller was also asked about pleading guilty to a Kansas charge. Defense counsel expressed interest in the arrangements whereby Miller went back and forth between Missouri and Kansas in connection with the charges. Miller testified that he pleaded guilty to two charges in Missouri but was not sentenced on the pleas. He remained free on bond on the Missouri charges. He then went to Kansas, entered a plea and was sentenced on the Kansas charge. He then reappeared in Missouri to testify against appellant. In the course of the examination, the following incident, which is the basis of the claim of error, occurred:

"Q [by defense counsel] Were you given some permission by someone to then go to Kansas and try to dispose of your matters over there?

"A By my lawyers.

"Q Do you mean you went to Kansas without Court approval?

"A I don't know whether—you know, I take it it was worked out, because that was part of the agreement, as I understood it.

"Q Well, do you understand or not, I don't want to put words in your mouth, that ordinarily when you are on a bond in a certain jurisdiction, like the State of Missouri—

"THE COURT: Mr. Brown, I don't think we are going to have to inform this jury about what the law is. You may be 100 percent right, but this isn't the way we do things.

"MR. BROWN: Your Honor, what I am attempting to do—

"THE COURT: You can ask him what the facts are, but I am just not going to let counsel testify as to what the law in Missouri is, whether it is for the State or for the defendant.

"MR. BROWN: May I approach the bench, Your Honor?

"THE COURT: Yes, you may."

At the bench counsel objected that the court's remarks demonstrated a hostile attitude on the part of the court against defense counsel and a mistrial was requested. The request was overruled.

In this court appellant asserts that the remarks of the trial court embarrassed defense counsel, "intimidated him and unduly limited his effective cross-examination of such an important witness."

Appellant characterizes the remarks as "angry" but the transcript on appeal cannot, of course, reflect the tone of the court's remarks. The question is whether the remarks of the court as they now appear prejudiced appellant's right to a fair trial.

Appellant would equate the remarks here to those of the same trial judge which were found to have been prejudicial to the defendant in *State v. Wren,* 486 S.W.2d 447 (Mo.1972). In that case, the remark of the court was held to have had the possibility of causing the jury to feel that the court disbelieved the defense offered. The remark here was hardly of that nature. Of significance in that case is the court's observation that it involved "* * * an area * * * wherein precedent is of little value and each case must be resolved on its own facts." 486 S.W.2d at 448.

*State v. Wendel,* 532 S.W.2d 838 (Mo.App. 1975) also relied upon by appellant involved a remark by the trial court which "served to notify the jury that the trial court considered defendant a man of violence— * * * ." 532 S.W.2d at 839. The remark was held prejudicially erroneous. However, the remark here involved was certainly not of that nature.

The transcript shows that, despite the claim now made of embarrassment, intimidation and limitation of cross-examination, defense counsel continued to examine the

witness at length concerning his comings and goings between Kansas and Missouri, demonstrating generally that the witness had no knowledge of what, if any, arrangements existed on that score.

The test of error in a matter such as this is whether or not the trial court's remarks may have prejudiced the minds of the jury, depriving the defendant of his right to a fair trial. *State v. Hill,* 518 S.W.2d 682, 685[6–9] (Mo.App.1975); *State v. Ross,* 371 S.W.2d 224, 228[7, 8] (Mo.1963). The remarks here, although better not to have been volunteered, reflect neither upon defendant nor defense counsel. They could not conceivably have affected defendant's right to a fair trial. *State v. Thompson,* 465 S.W.2d 590, 593[7] (Mo.1971).

Appellant next complains of the trial court's refusal of two instructions offered on behalf of defendant, cautioning the jury concerning Miller's testimony in the light of his having been granted immunity from further prosecution. The trial court's refusal to give these instructions was directed by Notes on Use to MAI–CR 2.01, limiting instructions to be given on the credibility of witnesses and the weight to be accorded their testimony. *State v. Lang,* 515 S.W.2d 507, 510–511 (Mo.1974).

Appellant suggests that "the MAI committee and the Appeals Court should re-examine their thinking in line with [Federal criminal instruction 9.04]." This court has no authority to introduce such an instruction, directly contrary to MAI notes on use.

Appellant also complains because, after two hours-40 minutes deliberation the jury stood 11 to 1, the court gave MAI–CR 1.10, the so-called "hammer instruction." As pointed out in No. 28,583, the giving of such an instruction lies in the trial court's discretion and no abuse of that discretion has been demonstrated here.

Finally, appellant contends that his motion for directed verdict should have been sustained because of inconsistencies in the testimony of the state's witnesses. The inconsistencies were between the Hen House employees' description of the robbers' attire and Miller's testimony. The employees said one robber had a red bandana over his face and the other a blue bandana and that neither wore headgear. Miller said they both had blue bandanas and that both he and appellant wore beanies pulled down to their eyes. An employee said $100 was taken. Miller said it was $300. These inconsistencies did not destroy the submissibility of the state's case.

Miller's statement was corroborated by the testimony of VanBuskirk that appellant said that what Miller said was true. Miller's credibility is not to be determined as a matter of law. The factors affecting his credibility, including the deal with the state in return for his testimony and the relations between appellant and Miller's wife, were fully explored and were before the jury, to be passed upon by that body and not by this court.

Judgment affirmed.

All concur.