Karen King Mitchell, Chief Judge
The Director of Revenue appeals the reinstatement of Jessica Smith's driving privileges following a trial de novo in the circuit court of Platte County. Director had previously suspended Smith's driving privileges for operating a motor vehicle with a blood alcohol content (BAC) above the legal limit. Director raises three points on appeal. First, Director argues that the trial court erred in finding the evidence insufficient to establish that Smith's BAC exceeded .08% when she operated her vehicle. Second, Director argues that the trial court erred in excluding evidence of Smith's BAC for lack of foundation because Smith failed to make a specific, timely objection to the evidence. And, third, Director argues that the court erred in finding that Director failed to demonstrate compliance with the Department of Health and Senior Services rule requiring a fifteen-minute observation period of the subject before conducting the breath test. Smith concedes error on Director's second point and asks that we remand the case to the trial court.[1] Because the trial court's judgment is based upon a misapplication of the law, we reverse the judgment and remand for further proceedings.
Background
On July 16, 2017, Deputy Lincoln Pruitt of the Platte County Sheriff's Department stopped a vehicle driven by Smith because the license plate was expired. When Deputy Pruitt approached Smith, he detected *900 the odor of intoxicants and asked Smith how many drinks she had consumed, to which she replied, "a couple." Deputy Pruitt had Smith perform several field sobriety tests, and her performance was indicative of intoxication. Deputy Pruitt asked Smith to submit to a portable breath test (PBT), and she consented. The PBT revealed the presence of alcohol. Deputy Pruitt then arrested Smith for driving while intoxicated and transported her to the Platte County Detention Center.
At the Detention Center, Deputy Michael Swindler advised Smith of the Implied Consent law and asked her to submit a sample of her breath for testing, and Smith again consented. Deputy Swindler examined Smith's mouth to ensure there was nothing in it and began a fifteen-minute observation period at 3:30 a.m. Smith subsequently provided a breath sample that indicated a BAC of .119%. Smith's license was confiscated, and she was issued a Notice of Suspension, along with a citation for driving while intoxicated and failure to register her vehicle.
Smith requested an administrative hearing before the Department of Revenue. Following the hearing, the Department determined that Smith had been arrested upon probable cause to believe she was driving a motor vehicle while her BAC was at or above the legal limit, and it sustained the suspension of her driving privileges. Smith sought a trial de novo before the circuit court of Platte County.
At the trial de novo, Smith and Director stipulated that there was probable cause for Smith's arrest, leaving the sole issue for determination whether her BAC was at or above .08. Director initially sought an eight-month continuance because Deputy Swindler, the officer who performed the breath test, was unavailable to testify due to a recent military deployment. Smith objected, and the trial court overruled the request. The Director requested findings of facts and conclusions of law.
Director then presented testimony from Deputy Pruitt. Deputy Pruitt testified that he arrested Smith for driving while intoxicated after having initially stopped her for an expired license plate. He further testified that he brought Smith to the Detention Center where he observed Deputy Swindler check her mouth for any foreign material and he was present for the observation period, during which Smith did not eat or drink anything, nor did she vomit, smoke, or place anything into her mouth. Deputy Pruitt indicated that he filled out portions of the Alcohol Influence Report (AIR) related to Smith's traffic stop and arrest, while Deputy Swindler filled out the portions related to Smith's breath test.
Following Deputy Pruitt's testimony, Director offered Exhibit A, which contained the AIR, Form 11 (the report from the breath-testing machine), a copy of Deputy Swindler's permit to operate the machine, maintenance reports on the machine, Deputy Pruitt's narrative of Smith's arrest, copies of Smith's traffic citations, and peace officer licenses for Deputies Swindler and Pruitt. When offering Exhibit A, Director expressly reserved offering any evidence within the exhibit pertaining to Smith's BAC. On cross-examination of Deputy Pruitt, however, Smith directly elicited evidence of her BAC result:
Q. Let me take your attention back to the time of the test -
A. Okay.
Q. - to the BAC test.
A. Okay.
Q. Now I think you testified that you didn't remember what time it happened. If I hand you a copy of the BAC test, -
A. Uh-huh.
*901 Q. - would it reflect your recollection of what time the test happened?
A. I mean, where it's - where I wasn't the one observing it, I don't, you know, if I - I mean, I - I'll look at it.
Q. If I hand you a copy of your narrative that you wrote as part of the Police Report that you submitted in the case and draw your attention to one of the very last sentences -
A. Uh-huh.
Q. - would - maybe that would help.
A. The - okay -
Q. Do you want to read that sentence?
A. Yeah.
Q. That helps refresh your memory?
A. (Reading) At 03:49 hours, Smith provided a breath sample that registered at .119 BrAC.[2 ]
Smith also asked Deputy Pruitt several questions about the testing procedure itself, relying on the Breath Alcohol Operator's Manual, which was admitted into evidence as Smith's Exhibit 1.
Deputy Pruitt testified that, to begin testing, the operator must push the "Run" button on the machine, after which, the machine prompts the operator to "Scan Operator's Card" and then "Scan Driver License." The operator is then to verify that all information provided is correct in the machine and then push "Okay." After the operator pushes "Okay," the machine begins an automated test sequence wherein the machine purges all chambers and the internal plumbing of any residual substances "by ambient surrounding air that is pulled through the Breath Tube and pumped through the instrument by an internal pump." If the chamber is clear, three zeroes then appear on the display. A measurement is then "taken after the ambient zeroing period," and if no contamination is detected, the machine will again display three zeroes. After the machine goes through the purge, the ambient check, the zeroing blank check, and the internal standard check, it will then display "did the subject refuse." If the subject refuses, the officer pushes "yes," and the machine prints a refusal ticket. If the subject does not refuse, the officer pushes "no," and the machine then displays "Please blow." If the test is successful, a BAC result is provided.
Form 11, the printout from Smith's breath testing identified several different times. In the top right-hand corner, a box identified as "Time of Test" indicated 03:43:21. In a box marked "Subject Test Results," the following times were identified:
BLANK TEST 0.000 03:44 INTERNAL STANDARD VERIFIED 03:44 SUBJECT SAMPLE (Vol=3.73L) 0.119 03:47 BLANK TEST 0.000 03:48
Following Deputy Pruitt's testimony, Director offered testimony from Detective Caleb Jeffries, the officer in charge of maintaining the breath-testing machine. And at the conclusion of Detective Jeffries's testimony, Director offered into evidence the results of Smith's BAC testing as included in Exhibit A. Smith objected on the ground that the results lacked foundation for the following reasons:
[T]he Department has failed to prove that the officer has strictly complied *902 with the procedures required by the regulations in performing the breath test; namely, in that the officer did not complete the 15-minute observation period prior to Step 3 on the operational checklist, pushing "Run", entering the pertinent party's information and allowing the BAC test or the BAC machine to perform the self-check, pull the ambient air in, purge it, et cetera.
Director responded that the fifteen-minute observation period was complied with insofar as "[t]he Department of Health Regulations specifically say it's the continuous period that ends when a breath sample has been provided." Smith further argued that, according to "the Department's own 'how-to' guide, ... the observation period [must] be completed before the officer moves on to the self-testing features in the machine; which, according to the BAC test in this machine, occurred at 03:44. That's only 14 minutes."
The trial court did not rule on the admissibility of the BAC test results, but Director, in an abundance of caution, made an offer of proof that Smith's BAC had been .119% in case the trial court later deemed the results inadmissible. Shortly thereafter, the trial court issued its judgment, setting aside the suspension of Smith's driving privileges. The judgment did not directly address the admissibility of Director's Exhibit A, but it made the following two relevant determinations:
3. The Court finds that the evidence was insufficient as a matter of law to meet the Director's burden. The arresting officer, Deputy Pruitt, testified that he was not present when the breathalyzer was administered. He testified that he was present but on cross-examination, he did not recall the 15[-]minute observation period. He did not recall the administering of the breathalyzer and that he was not in the room when Deputy Swindler administered the test.
He further testified that he did not check the Petitioner's mouth prior to her taking the breathalyzer and that ... Deputy Swindler was the one who checked her mouth. Deputy Swindler, who administered the breathalyzer, did not testify.
4. The Court further finds that Exhibit A indicates that the 15[-]minute observation period began at 03[:]30 and that Form 11 (Blood Alcohol Test Report) shows the test was administered at 03:43:21. Thus, the breathalyzer was administered prior to the expiration of the 15[-]minute observation period as required by 19 CSR 25-30.060 Operating Procedures for Breath Analyzers. Further, there was insufficient evidence that the breath analysis of the Petitioner was administered "following the approved methods and techniques of the Division of Health." Cf. Vanderpool v. Director of Revenue, 226 S.W.3d 108 (Mo. Banc 2007). Thus, the Director has failed to meet its burden.
Director appeals.
Standard of Review
"We review a trial court's judgment reinstating driving privileges following an administrative suspension or revocation under the standard of Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976)." Auck v. Dir. of Revenue , 483 S.W.3d 440, 443-44 (Mo. App. E.D. 2016). As such, we "will affirm the decision of the trial court if it is supported by substantial evidence, it is not against the weight of the evidence, and it does not erroneously ... declare or apply the law." Id. at 444. "We review declarations of law de novo. " Id.
Analysis
Director raises three points on appeal. First, Director argues that the trial court *903 erred in finding the evidence insufficient to establish that Smith's BAC was at or above the legal limit. Second, Director argues that the trial court erred in excluding evidence of Smith's BAC test results. And, third, Director argues that the trial court erred in determining that Deputy Swindler's testimony was necessary to meet Director's burden. Smith offers no response to Director's Points I and III, but concedes error on Point II and urges this court to issue a limited remand. Because the trial court misapplied the law, we reverse its judgment and remand for further proceedings consistent with this opinion.
The Department of Revenue is required by statute to "suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight...." § 302.505.1.[3]
During review of a license suspension or revocation under section 302.505.1, the trial court is to determine whether the suspension is supported by evidence that: (1) the driver was arrested on probable cause for violating an alcohol-related offense; and (2) the driver's blood alcohol concentration exceeded the legal limit of .08 percent.
White v. Dir. of Revenue , 321 S.W.3d 298, 309 n.11 (Mo. banc 2010). "The director must establish the grounds for suspension by a preponderance of the evidence." Id.
Here, Smith and Director stipulated that Deputy Pruitt had probable cause to arrest Smith for an alcohol-related offense; thus, the only issue before the trial court was whether Smith's BAC exceeded .08. To prove this, Director offered into evidence the results from Smith's BAC test through Exhibit A. Though Smith objected to evidence of her BAC test result, the trial court did not rule on the objection at the trial de novo, instead choosing to take the matter under advisement. The trial court's judgment, however, does not expressly indicate whether the court ultimately found the evidence admissible. Instead, the judgment merely concludes that the evidence was "insufficient as a matter of law" to sustain Director's burden.
In Director's Point II, Director treats the issue as though the court excluded the evidence of Smith's BAC in Exhibit A. In response, Smith appears to agree. But Smith acknowledges that she elicited evidence of her BAC results through her cross-examination of Deputy Pruitt and, therefore, even if the BAC evidence in Exhibit A were excluded, the trial court still had evidence before it through Deputy Pruitt's testimony from which it could conclude that Director satisfied his burden. Smith suggests that the trial court's judgment failed to assess the credibility of Deputy Pruitt's testimony pertaining to the BAC evidence and, consequently, we should remand the matter to allow the trial court the opportunity to do so under the holding in Collins v. Director of Revenue , 399 S.W.3d 95 (Mo. App. W.D. 2013).[4]
*904 We find the trial court's judgment wholly unclear with respect to admission of Smith's BAC test result. It may be, as Smith suggests, that the court excluded the BAC evidence from Exhibit A and failed to evaluate the credibility of Deputy Pruitt's testimony. But, because "we will affirm the trial court's judgment 'if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient,' " Jaco v. Jaco , 516 S.W.3d 429, 432 (Mo. App. W.D. 2017) (quoting Blue Ridge Bank and Trust Co. v. Trosen , 221 S.W.3d 451, 457 (Mo. App. W.D. 2007) ), we must consider the possibility that the trial court admitted the evidence in Exhibit A, but found all BAC evidence (including Deputy Pruitt's testimony) not to be credible for the reasons provided in the judgment.
Here, the trial court gave two reasons for finding that Director failed to meet his burden as a matter of law: (1) Deputy Swindler, the officer administering the breath test, did not testify; and (2) Deputy Swindler failed to strictly comply with the fifteen-minute observation period required by 19 C.S.R. § 25-30.060(7) because he commenced the test before an observation period of fifteen minutes had elapsed.[5] Neither reason justifies the result reached by the trial court.
In characterizing Director's evidence as insufficient "as a matter of law," it appears that the court found the BAC evidence in Exhibit A inadmissible, given that "credibility is not to be determined as a matter of law." State v. Jones , 558 S.W.2d 242, 246 (Mo. App. 1977) ; see also S.F.M.D. v. F.D. , 477 S.W.3d 626, 637 (Mo. App. W.D. 2015) (rejecting the argument that foundational challenges to authenticity of an exhibit require a court to find it not credible as a matter of law). If, however, the court did admit the BAC evidence in Exhibit A, but found all BAC evidence not credible "as a matter of law," this holding would be erroneous because, as explained below, such a determination cannot be based on a misinterpretation of the law.
With respect to the trial court's first finding, that the evidence was insufficient as a matter of law because "Deputy Swindler, who administered the breathalyzer, did not testify," the trial court erred. To begin, Exhibit A, in its entirety, was admissible as a record of the Department of Revenue, regardless of whether Deputy Swindler testified. Section 302.312.1 mandates that "[c]opies of all papers, documents, and records lawfully deposited or filed in the offices of the department of revenue ... and copies of any records, properly certified by the appropriate custodian or the director, shall be admissible as evidence in all courts of this state." Furthermore, BAC "test results are admissible through either the alcohol influence report or an officer's testimony," but "both are not necessary for the Director to meet [his] burden. " Whitworth v. Dir. of Revenue , 207 S.W.3d 623, 627 (Mo. App. E.D. 2006) (emphasis added). Thus, Deputy Swindler's absence did not preclude the court's consideration of the BAC evidence from Deputy Pruitt. Accordingly, to the extent the trial court relied on the absence of Deputy Swindler's testimony to either exclude the BAC test result in Exhibit A from evidence or to ignore the BAC evidence from Deputy Pruitt, the trial court misapplied the law. Because the parties stipulate that there was probable cause to arrest Smith for driving while intoxicated and the BAC test result was admitted into evidence without objection during the *905 cross-examination of Deputy Pruitt, Director's evidence did not fail "as a matter of law" and the trial court erred in reaching this legal conclusion.
As mentioned above, it is possible that the trial court admitted the BAC evidence in Exhibit A, but then found all BAC evidence (including Deputy Pruitt's testimony) not credible.[6] But, if this is what the court did, it appears to have done so based upon a misinterpretation of the law.
In the court's second finding, it determined that Director failed to meet his burden because Deputy Swindler failed to strictly comply with "the approved methods and techniques of the Department of Health" regarding the 15-minute observation period. With respect to the fifteen-minute observation period, 19 C.S.R. § 25-30.011(2)(H) requires that the driver be observed for at least fifteen minutes, during which time the driver does not smoke, vomit, or engage in "oral intake." If the driver does any of these things, the fifteen-minute observation period must start over.
At issue in Smith's trial de novo was how the fifteen-minute observation period is to be calculated. Smith argued that at least fifteen minutes had to elapse before an officer could push "Run" and allow the machine to begin its automated testing sequence. Because the evidence indicated that the observation period began at 3:30 and the automated testing sequence began at 3:44, Smith argued that Director failed to establish strict compliance with the regulations insofar as fewer than fifteen minutes elapsed. Director argued that the applicable time window was from the beginning of the observation period until the driver provided a breath sample. The evidence indicated that the observation period began at 3:30 and Smith provided a sample at 3:47-a total time of seventeen minutes.
The trial court appears to have accepted Smith's argument, because it determined that the applicable time was 03:43:21-the time identified on Form 11 as the "Time of Test," which the evidence indicated was the time the operator pushed "Run." In calculating the time period this way, the trial court misapplied the law and erred in either excluding or rejecting the BAC evidence, as a matter of law.
19 C.S.R. § 25-30.011(2)(H) defines the "[o]bservation period" as "the minimum fifteen- (15-) minute continuous period that ends when a breath sample has been provided into the approved breath analyzer." (Emphasis added.) Contrary to the trial court's rationale, the regulation does not preclude an operator from turning on the testing machine or starting its automated testing sequence before fifteen minutes have elapsed from the start of the observation period. Though Detective Jeffries testified that doing so is best practice, it is not required by the regulations and, therefore, is not a basis for either excluding the evidence or rejecting it as a matter of law.[7]
*906 Accordingly, Director's arguments are well taken.
Conclusion
The trial court misapplied the law in setting aside Director's suspension of Smith's driving privileges. Therefore, its judgment is reversed and the case is remanded for further proceedings consistent with this opinion.
Victor C. Howard, Judge, and George E. Wolf, Special Judge, concur.

Smith did not respond to Director's other points on appeal. And though we ultimately reverse and remand the trial court's judgment, we do so for reasons other than that advanced by Smith.

It appears that Deputy Pruitt's use of "BrAC" refers to breath alcohol content as opposed to blood alcohol content.

All statutory citations are to the Revised Statutes of Missouri (2016), unless otherwise noted.

Collins held that, where the trial court erroneously excluded evidence, it never evaluated the credibility of that evidence; therefore, a remand was required to give the court the opportunity to evaluate the credibility of the erroneously excluded evidence. Collins v. Dir. of Revenue , 399 S.W.3d 95, 103 (Mo. App. W.D. 2013). It is not clear to us that the trial court failed to evaluate the credibility of Deputy Pruitt's testimony regarding the BAC results. Based on the judgment's erroneous conclusion regarding calculation of the 15-minute observation period, the trial court may very well have rejected Deputy Pruitt's testimony regarding the BAC evidence.

Regulatory citations are to the Missouri Code of State Regulations (2017), unless otherwise noted.

"[W]hile Section 302.312.1 permits the Director to submit his case on records alone and does not require the Director to present live testimony, doing so poses risks if the Director is unable to explain discrepancies in the Section 302.312.1 evidence or to rehabilitate witnesses." Tweedy v. Dir. of Revenue , 412 S.W.3d 389, 396 (Mo. App. E.D. 2013). "If the driver disputes the Director's evidence in any manner, the trial court has the right to disbelieve that evidence." Id. (internal quotation omitted).

This is not to say the trial court was required to find the BAC evidence credible. The trial court could very well have determined that the evidence lacked credibility for some other reason. But a court may not reject evidence as not credible, "as a matter of law," when the trial court misinterprets the law upon which its determination is based.