Justin Ray HILKEMEYER,
Petitioner–Respondent,

v.

DIRECTOR OF REVENUE,
Respondent–Appellant.

No. SD 30811.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 15, 2011.

Rehearing Denied Oct. 7, 2011.

Application for Transfer Denied
Dec. 20, 2011.

Chris Koster, Attorney General, and, Brian Bear, Assistant Attorney General, Jefferson City, MO, for Appellant.

David Simpson, St. James, MO, for Respondent.

DON E. BURRELL, Judge.

The Director of the Missouri Department of Revenue ("Director") suspended the driver's license of Justin Ray Hilkemeyer ("Driver") pursuant to § 302.505 after Director determined that Driver was arrested upon probable cause to believe he was driving while intoxicated, a violation of

§ 577.010, RSMo 2000.[1] Driver filed a petition for trial *de novo* in the circuit court pursuant to § 302.535. Following that trial, the circuit court entered a civil judgment ordering Director to restore Driver's driving privileges. In two points relied on, Director now appeals that judgment, claiming the trial court erred by: (1) misapplying the law because Driver "had the burden to prove—but he never presented any evidence—that he vomited or otherwise emptied the contents of his stomach[;]" and (2) misapplying the law by limiting the definition of "observation" "solely to the sense of sight[.]" Finding no merit in either of these contentions, the judgment—presumed correct—is affirmed.

## Standard of Review

 "In appeals from a court-tried civil case, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *White v. Director of Revenue*, 321 S.W.3d 298, 307–08 (Mo. banc 2010) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). The judgment is presumed correct, and the appellant has the burden of proving it erroneous. *Strobl v. Lane*, 250 S.W.3d 843, 844 (Mo.App. S.D.2008). If the matter contested is a question of law, we review the legal question *de novo* but give deference to the trial court's assessment of the evidence when facts relevant to the issue are contested. *White*, 321 S.W.3d at 308 (citations omitted).

## The Trial

Missouri Highway Patrol officer Brock Vogt ("Vogt") was the sole witness. He testified that he stopped Driver's vehicle during the early morning hours of February 5, 2010, after he observed Driver run a stop sign and fail to signal a turn. After conducting some field sobriety tests, Vogt believed Driver was intoxicated and placed him under arrest for driving while intoxicated. He then transported Driver to the Phelps County Sheriff's office where Driver took a breathalyzer test administered by Vogt.

Vogt testified that he observed Driver for more than fifteen minutes before administering the breathalyzer test, that Driver did not eat, drink, or smoke anything during that time period, and that Driver did not place anything else in his mouth or vomit. Vogt testified that he had a Type II permit administered by the Missouri Department of Health that authorized him to operate the DataMaster breathalyzer machine he used to test Driver and that he followed the required checklist for operating the DataMaster.

When Director's counsel then asked Vogt to state the results of the breathalyzer test, Driver's counsel made the following objection: "Judge, my objection is, is that [Director] hasn't established correct and adequate foundation for the entrance of the results of the breath test into evidence" and asked permission to *voir dire* the witness. In response to the trial court's question about what foundational element was missing, Driver's counsel answered, "I don't think he is—[Director] has shown that they have—they have satisfied the 15–minute observation period that they need to do immediately before administering the test."

Driver's counsel then elicited the following evidence during his *voir dire* examination of Vogt. No one assisted Vogt with either his arrest or testing of Driver. Five minutes of the fifteen-minute observation period claimed by Vogt occurred during the time he was transporting Driver to the

---

**1.** Unless otherwise indicated, all other statutory references are to RSMo Cum.Supp.2010.

Sheriff's office. During that drive, Driver was handcuffed behind his back and was sitting next to Vogt in the front seat of Vogt's vehicle. Vogt was keeping an eye on both Driver and the road as he drove. Once they reached the Sheriff's office, Driver was seated directly across a table from Vogt, who was asking Driver questions from the Alcohol Influence Report ("AIR") and typing in Driver's responses on a computer. Vogt could not watch Driver and the computer terminal at the same time, but he was "carefully watching" Driver in his peripheral vision. Vogt then escorted Driver to the DataMaster machine and seated him less than a foot away on his right. Although Vogt maintained that he continued to "carefully observe" Driver while setting up the DataMaster, he did concede that he had to look away from Driver when he turned on the machine.

Counsel for Director then broke in, asking the trial court, "Can I voir dire in his voir dire?" The following colloquy then occurred:

THE COURT: We're getting pretty lengthy here for a foundational issue, but—

[Driver's Counsel]: Judge, I'm just trying to establish that this—the Department of Revenue hasn't established a foundation. The foundation is that they actually carefully watched, but the Supreme Court says that that means face-to-face. Keep your eyes on him. And I would just like a chance to make my record here before the decision to admit this evidence is admitted.

[Director's Counsel]: I disagree with that. Actually, it says either face-to-face or peripherally.

[Driver's Counsel]: Judge, in *Vanderpool v. Director of Revenue*, the cite is—

THE COURT: I'm—

[Driver's Counsel]: I just got the Western District case number.

THE COURT: I'm reading where it says—

[Driver's Counsel]: If I can approach, Judge. The only way to ensure this purpose is for the arresting officer or operator to actually watch the driver for the entire 15 minutes in that, as we discuss, the length of the observation period is critical to ensuring the accuracy of the test result. Hence, to carry her burden of establishing that the mandated 15–minute observation period is satisfied, to lay a proper foundation for the admission of the respondent's BTR, is not enough that the Director present evidence that the arresting officer or operator did not see the driver smoke, put anything in his mouth, or vomit during the 15–minute observation period. She must also show that he was watching him carefully, for the entire 15 minutes, so that, if the driver did smoke, did put anything in his mouth, or did vomit, he could have seen it. If this were not true, then the 15–minute observation period would be effectively reduced to whatever period of time the arresting officer or operator actually watched the driver to determine if he smoked, put anything in his mouth, or vomited.

THE COURT: Okay. I'm—I'm reading the case. Your next—

[Driver's Counsel]: I've highlighted it, Judge.

THE COURT: Okay. I will allow you to finish up here, [Driver's Counsel].

[Driver's Counsel]: Thank you, Your Honor.

After getting a few more concessions from Vogt about occasions on which he

was not looking directly at Driver during the fifteen-minute observation period, Driver's counsel stated, "Okay. That's all the questions I have, Judge. My argument is, is that even if you believe the officer's testimony, you're not able to watch something carefully when you're doing something else and you—and the thing you're supposed to be watching carefully is in your peripheral vision. So we object to the admission of the foundational basis for the admission of the evidence that [Director's] offered." The trial court responded by stating it would review *Vanderpool [v. Director of Revenue*, 226 S.W.3d 108, 110 (Mo. banc 2007)], and take Driver's foundation objection with the case.

Director's counsel then continued her direct examination of Vogt and elicited the following additional relevant testimony. Vogt would have been able to observe it if Driver had attempted to put anything into his mouth. After being assured by the trial court that Driver's foundation objection would be preserved, Vogt was allowed to testify that the DataMaster test result showed the alcohol level in Driver's blood to be .111 percent and that he recorded that figure in the AIR. The testimony then concluded with the following cross-examination of Vogt:

Q. Now, you said you would be able to see [Driver] out of your peripheral vision, I assume, if he put anything in his mouth. Is that what you said?

A. Yes. That's fair to say.

Q. What about—would you be able to see out of your peripheral vision if he belched?

A. I would be able to hear it.

Q. Well, you've heard of SBD belches. What about a silent belch? You wouldn't be able to see that, would you?

A. It would be difficult.

Q. What about regurgitated contents to his mouth. Would you be able to see him do that?

A. Not—

Q. It would be difficult to see, wouldn't it?

A. —necessarily.

Q. It would be difficult to see?

A. I would say that's correct.

[Driver's Counsel]: Okay. That's all I have, Judge.

THE COURT: Redirect?

[Director's Counsel]: No.

The AIR was then received into evidence subject to Driver's foundation objection and the trial court took the case and the objection under advisement.

## The Judgment

The trial court issued its judgment on July 13, 2010. The judgment noted that, under § 577.037.1, RSMo 2000, a breath test is admissible in a § 302.505 suspension proceeding as long as the requirements of regulations promulgated by the Missouri Department of Health ("MDH") as set forth in 19 C.S.R. 25–30.011–25–30.080 are met. It then stated:

The rule applicable when using a Data-Master to test the driver's breath, 19 C.S.R. 25–30.060(3), requires, in pertinent part, that the driver be "observed for at least 15 minutes by ['the operator of the breath analyzer, the arresting officer or by any other competent individual,' 19 CSR 25–30.060.7]. No smoking or oral intake of any material during this time; if vomiting occurs, start over with the 15 minute observation period." In other words, a driver submitting to a breathalyzer test must be "observed" for at least fifteen minutes prior to taking the test to ensure that the driver does

not smoke, vomit, or place anything in his mouth for the test results to be admissible at trial. *Carr v. Dir[ector] of Revenue*, 95 S.W.3d 121, 126 (Mo.App. 2002).

The judgment then discussed the critical importance of the prescribed observation period in determining whether a person was driving while intoxicated, citing the learned treatises referenced in *Carr*. The judgment then concluded as follows:

> While the officer in this case testified that he observed [Driver] the required 15 minutes prior to administering the breath test, he also stated that he was doing various other activities such as driving a car and entering data using a keyboard and monitor. The officer admitted that while he was multitasking he was not able to directly observe [Driver] *and* that it would have been difficult for him to *sense* if [Driver] regurgitated or belched during that time. The results of the breath test, at .111% BAC, is sufficiently close to the legal limit that it was critical for the officer to insure that [Driver's] BAC level was not compromised because it involved such a fine line distinction between what constituted a permissible level of blood alcohol content. Here, without the baseline level of procedural requirements being followed before the test was administered, we can have no confidence in the accuracy of the test results.

> I therefore find that [Director] failed to establish an adequate foundation for admitting the BAC test results into evidence. The introduction of the test results into evidence is "essential to establish a prima facie case under section 302.505". *Orton v. Director of Revenue*, 170 S.W.3d 516, 520 (Mo.App.2005).

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Judgment is hereby entered in favor of [Driv-er] and against [Director]. [Director] is ordered to restore [Driver's] driving privileges and to return to him his driving license forthwith.

(Italics added.)

### Analysis

The trial court's judgment was entered a few weeks before our supreme court issued its seminal opinion in *White v. Director of Revenue*, 321 S.W.3d 298 (Mo. banc 2010). We note that the arguments now asserted by Director on appeal differ from her argument to the trial court that she had established a proper foundation for the admission of the breathalyzer test results. Instead of arguing that the trial court misapplied the law in ruling the breathalyzer test results inadmissible because Vogt's testimony was legally sufficient to satisfy the foundational element that he had observed Driver for the required fifteen-minute period, Director's first point alleges the trial court misapplied the law because Driver "had the burden to prove—but he never presented any evidence—that he vomited or otherwise emptied the contents of his stomach." Her second point alleges the trial court "misapplied the legal requirements for a valid breathalyzer test in that 'observation' by a police officer is not limited solely to the sense of sight, but includes all his senses." Because *White* was issued shortly after the instant case was decided, we do not believe it would be appropriate to affirm simply because Director is now making arguments not presented to the trial court and will review her new contentions in the order presented.

*Point I—Contending Driver had a burden to prove facts that would call into question the validity of the breathalyzer test results*

██ Director continues to cite *Vanderpool* as authority for her claim that the

only way the breathalyzer result could have been excluded was if Driver had "present[ed] some evidence that he or she smoked, vomited or orally ingested some other materials during the 15 minute [observation] period" or did something else that would call into question the validity of the breathalyzer test. The rule expressed in *Vanderpool* (quoted *Coyle v. Director of Revenue*, 181 S.W.3d 62, 66 (Mo. banc 2005)), *overruled by White v. Director of Revenue*, 321 S.W.3d 298 (Mo. banc 2010), in stating, " '[T]he lack of observation, without more, does not provide a basis to question the validity of the blood alcohol test results.' " 226 S.W.3d at 110. *Coyle* had relied on language in *Verdoorn v. Director of Revenue*, 119 S.W.3d 543 (Mo. banc 2003), that indicated Director's uncontroverted evidence was entitled to a "presumption of validity" that required a driver to present evidence of his own to rebut it. *Id.* at 546, *overruled by White v. Director of Revenue*, 321 S.W.3d 298 (Mo. banc 2010).

Although *Vanderpool* was not specifically mentioned in *White* as a case that should no longer be followed, and *White* did not specifically deal with the foundational requirements for the admission of breathalyzer tests, *Vanderpool*'s requirement that a driver present evidence was invalidated when *White* held that "[n]o provision in section 302.535 creates a presumption that the [D]irector's evidence establishing a prima facie case is true or shifts the burden to the driver to produce evidence to rebut such [a] presumption." 321 S.W.3d at 306. *Verdoorn*'s "presumption of validity" was contrary to the plain language of section 302.535.1, which states that " '[t]he burden of proof shall be on the state to adduce the evidence.' " *Id.* Driver had no obligation to prove that something occurred during the fifteen-minute observation period that could have interfered with the results of the breathalyzer test. Point I fails.

### *Point II—Contending "observe" means more than "see"*

Director has failed to cite any portion of the record as support for her contention that the trial court erroneously limited the term "observe" to the "sense of sight." In fact, her contention is directly refuted by the trial court's judgment, which stated that "[Vogt] admitted that while he was multitasking he was not able to directly observe [Driver] *and* that it would have been difficult for [Vogt] to *sense* if [Driver] regurgitated or belched during [the required fifteen-minute observation period]." (Emphasis added.) Because the record refutes Director's claim that the trial court improperly limited Vogt's observations of Driver to sight only, Point II also fails, and the judgment of the trial court is affirmed.[2]

BARNEY, P.J., and LYNCH, J., Concur.

---

2. We again note that Director has not asserted in this appeal that the trial court erred in excluding the breathalyzer test results because Vogt's testimony was legally sufficient to establish the necessary foundation for its admission. Further, Director requests an outright reversal of the judgment-not a reversal with a direction that the trial court admit the excluded evidence and then give it whatever weight it deems appropriate. As a result, this opinion does not address an issue that Director has chosen, for whatever reason, to abandon.