

# In the
# Missouri Court of Appeals
## Western District

**PAYTON CHIANN COMER,**
                          **Appellant,**

                                                        **WD85493**
                                                        **OPINION FILED:**
                                                        **July 25, 2023**

**v.**

**DIRECTOR OF REVENUE, STATE OF MISSOURI,**
                          **Respondent.**

**Appeal from the Circuit Court of Boone County, Missouri**
The Honorable Stephanie Marie Morrell, Judge

Before Division Two:  W. Douglas Thomson, Presiding Judge, Cynthia L. Martin, Judge
and Thomas N. Chapman, Judge

Payton Chiann Comer ("Comer") appeals from the trial court's judgment sustaining the administrative suspension of her driving privileges.  Comer asserts that the trial court committed error in admitting the result of a breath test because it was not administered in accordance with regulations addressing the required 15-minute observation period.  Finding no error, we affirm.

**Factual and Procedural Background**[1]

Deputy Steven Verble ("Deputy Verble") of the Boone County Sheriff's Department observed a Toyota Camry weaving on the roadway just after midnight on September 4, 2021. Deputy Verble initiated a traffic stop and approached the vehicle. Comer was sitting in the driver's seat, and there were passengers in the vehicle. Deputy Verble detected a strong odor of alcoholic beverages coming from the vehicle, and observed that Comer's eyes were watery, bloodshot, and glassy. In addition, Comer's speech was slurred. Comer told Deputy Verble that she had been at a restaurant that evening and had consumed "about two drinks." Deputy Verble asked what she had been drinking, and Comer responded, "It was just like a tower of a margarita, but I didn't have too much because I actually didn't like it." Comer told Deputy Verble that she finished drinking "probably a couple hours ago [or] [m]aybe an hour."

Deputy Verble examined Comer's mouth at 12:15 a.m. and did not observe any substances present. He then conducted field sobriety tests, including a horizontal gaze nystagmus test, a walk-and-turn test, and a one-leg stand test. Comer exhibited signs of impairment in each of the field sobriety tests. Comer submitted to a preliminary breath test, which indicated that Comer had a blood alcohol content of .135 percent. Deputy Verble arrested Comer for suspicion of driving while intoxicated, placed her hands into handcuffs behind her back, and secured Comer in the backseat of his patrol vehicle with

---

[1]We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment. *Tarwater v. Dir. of Revenue*, 637 S.W.3d 383, 386 n.2 (Mo. App. W.D. 2021).

2

the seatbelt at approximately 12:25 a.m. Deputy Verble immediately walked around the front of the patrol car and seated himself in the front seat, where he began entering data on his computer and filling out paperwork.

Deputy Verble read the implied consent warning to Comer at 12:27 a.m., and she agreed to submit to a chemical test of her breath. Deputy Verble exited the front of the patrol car and immediately returned to the back of the patrol car where Comer was restrained. Comer was again asked if she had put anything in her mouth, smoked anything, or vomited, to which she replied "no." At 12:35 a.m., Comer provided a valid sample for the breath test, which indicated that her blood alcohol content was .141 percent. Deputy Verble then transported Comer to the Boone County Jail.

Comer's driver's license was administratively suspended pursuant to section 302.525.[2] Comer timely filed a petition for trial *de novo* pursuant to section 302.535, and the Circuit Court of Boone County conducted a hearing on June 2, 2022. Deputy Verble testified, and the trial court received into evidence Exhibit A (a copy of Comer's Missouri drivers record and Deputy Verble's alcohol influence report and supporting documents) and Exhibit 1 (a video from Deputy Verble's body cam taken at the time of his interactions with Comer). Deputy Verble noted in his alcohol influence report that, immediately prior to the breath test, Comer stated that she had not smoked, vomited, or had any oral intake for at least fifteen minutes, which Deputy Verble confirmed based on his observation of Comer during the same time period.

---

[2]All statutory references are to RSMo 2016, as supplemented through the date of Comer's arrest, September 4, 2021, unless otherwise indicated.

Comer's attorney did not object to the admission of Exhibit A into evidence, but did object to admission of the breath test result because the breath test was not administered in accordance with the regulatory standards set forth in 19 CSR 25-30.[3] At the time of this objection, Comer's attorney did not specify which part of the regulation had not been followed. However, during his cross-examination of Deputy Verble, Comer's attorney played Exhibit 1, the body cam video, to secure Deputy Verble's admission that he was not directly observing Comer during the entire 15-minute observation period. Specifically, Deputy Verble admitted that after he secured Comer in the backseat of his patrol car on the passenger side, he walked around the front of the car to sit in the driver's seat, that he was completing paperwork while seated in the front seat, that he opened the driver's door of the patrol car once to speak briefly to a passenger from Comer's vehicle who was approaching the patrol car, and that he exited his patrol car and walked back to the rear passenger side of his patrol car to administer the breath test. Comer's cross-examination of Deputy Verble made it clear that it was Comer's position that Deputy Verble did not maintain continuous visual contact with Comer during the 15-minute observation period, and that the breath test was therefore not admissible.

The trial court issued its findings of fact, conclusions of law, and judgment ("Judgment") on June 15, 2022. The Judgment concluded that Deputy Verble had probable cause to believe that Comer committed an alcohol-related traffic offense on September 4, 2021, and that a chemical test of Comer's breath revealed a blood alcohol

---

[3]All regulatory references are to the Code of State Regulations as updated through September 4, 2021, unless otherwise indicated.

4

content of .08 percent or more. The Judgment acknowledged Comer's contention that Deputy Verble did not conduct a proper 15-minute observation period, rendering the breath test invalid. However, after setting forth the definition of "observation period" found at 19 CSR 25-30.011(2)(H), the Judgment concluded that Deputy Verble "reasonably ensured that [Comer] did not have any oral intake," as Deputy Verble remained close to Comer while she was handcuffed with her hands behind her back and did not observe her smoke or have oral intake. The Judgment thus concluded that Comer's "breath test was taken in accordance with the regulations and is valid, and the breath test [result] was admissible." Accordingly, the Judgment sustained the suspension of Comer's driving privileges.

Comer appeals.

## Standard of Review

"[T]rial court judgments in driver's license suspension . . . cases under section 302.535 are reviewed as any other court-tried civil case." *White v. Dir. of Revenue*, 321 S.W.3d 298, 307 (Mo. banc 2010). Thus, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.* at 307-08.

## Analysis

Comer presents a single point on appeal. She asserts that the trial court committed error in admitting the results of her breath test into evidence because the test was not performed in accordance with statutory and regulatory requirements. Specifically, Comer claims that Deputy Verble did not conduct a proper 15-minute observation of Comer

5

pursuant to 19 CSR 25-30.011(2)(H) and sections 577.020 and 577.037, rendering the breath test invalid.[4]

Section 302.505.1 provides that the Missouri Department of Revenue "shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight." As Comer did here, the driver may then seek review of the suspension or revocation in a trial *de novo.* Section 302.535.1; *Stehwien v. Dir. of Revenue*, 592 S.W.3d 841, 845 (Mo. App. W.D. 2020). At the trial *de novo*, the Department of Revenue must prove by a preponderance of the evidence both that: (1) there was probable cause to arrest the driver for driving while intoxicated, and (2) that the driver's blood alcohol concentration was at least .08 percent. *Stehwien*, 592 S.W.3d at 845. Comer does not challenge the Judgment's finding that there was probable cause to arrest her for driving while intoxicated. Instead, Comer challenges the validity and admissibility of the breath test and, thus, whether the Department of Revenue met its burden to prove that Comer's blood alcohol concentration was at least .08 percent.

---

[4] The State contends that Comer did not preserve this claim of error for appellate review because during her trial *de novo*, she objected generally to admission of the breath test due to non-compliance with 19 CSR 25-30, without indicating which part of the regulation was not followed. We agree that Comer's objection should have been more specific, but conclude in this case that the objection was sufficient to preserve the issue raised on appeal for our review. Comer's cross-examination of Deputy Verble focused heavily on whether the 15-minute observation period was followed, and it is clear from the Judgment that the trial court understood Comer's objection to admission of the breath test to be based on a contention that the regulation addressing the 15-minute observation period was not followed.

Section 577.020.3 provides that "[t]o be considered valid, chemical analysis of the person's breath . . . shall be performed, according to methods approved by the state department of health and senior services." The Missouri Department of Health and Senior Services has promulgated regulations describing the operating procedures for approved breath analyzers in 19 CSR 25-30.060. In addition, the Department of Health and Senior Services has promulgated Form 8 applicable to the Alco-Sensor IV with Printer, the type of breath analyzer Deputy Verble administered to Comer. Form 8 provides that the operator of the machine must examine the mouth for any substance and then conduct a "15-minute observation period" before certifying that "[n]o smoking, oral intake or vomiting [took place] during [that] time." "Observation period" is defined by 19 CSR 25-30.011(2)(H) as:

> [T]he minimum fifteen- (15-) minute continuous period that ends when a breath sample has been provided into the approved breath analyzer, during which time the operator shall remain close enough to a subject to reasonably ensure, using the senses of sight, hearing, or smell, that a test subject does not smoke, vomit, or have any oral intake[5] during the fifteen- (15-) minute observation period. Direct observation is not necessary to ensure the validity or accuracy of the test result.

The trial court incorporated this definition of "observation period" in the Judgment, and concluded that Deputy Verble reasonably ensured that Petitioner did not have any oral intake during the 15-minute observation period. Comer disagrees with the trial court's conclusion. Relying on *Hilkemeyer v. Director of Revenue*, 353 S.W.3d 62 (Mo. App. S.D. 2011), Comer claims that by Deputy Verble's own admission, he did not

---

[5]Oral intake is defined in 19 CSR 25-30.011(2)(I) as "the act of placing a substance from outside the body into the mouth during the observation period."

7

"directly observe" Comer during the entire 15-minute observation period because he walked around the patrol car to return to his seat after placing Comer in the patrol car, because he was completing paperwork in the front seat of the patrol car during a part of the 15-minute observation period, and because he walked back around the patrol car to administer the breath test to Comer.

In *Hilkemeyer*, the trial court concluded that a breath test was not valid where the operator testified that he multitasked during parts of the 15-minute observation period, including by driving the patrol car and by entering data into a computer using a keyboard and monitor so that "he was not able to directly observe [the driver] *and* . . . it would have been difficult for him to *sense* if [the driver] regurgitated or belched during that time." *Id.* at 66. On appeal, the Southern District rejected the Director of Revenue's contention that the driver had to prove oral intake in fact occurred during the 15-minute observation period, noting that the driver "had no obligation to prove that something occurred during the fifteen-minute observation period that could have interfered with the results of the breath[] test." *Id.* at 67. The Southern District also rejected the Director of Revenue's contention that the trial court had improperly limited the term "observe" to "the sense of sight," as the trial court's judgment explicitly referenced the operator's inability "to directly ***observe*** [the driver]" and to "***sense*** if [the driver] regurgitated or belched." *Id.*

*Hilkemeyer* did not hold, as Comer suggests, that the operator of the breath analyzer must give his or her undivided attention to a suspected drunk driver during the 15-minute observation period in order for a breath test to be valid. But even if

8

*Hilkemeyer* could be read as Comer suggests, it would not control our resolution of this case. *Hilkemeyer* was decided in September 2011. At that time, the Missouri Department of Health and Senior Services regulations regarding the operation of breath analyzers included checklists set forth in 19 CSR 25-30.060, all of which were subject to a 15-minute observation period: "The fifteen (15)-minute observation of the subject, which is the first procedure . . . , may be done by the operator of the breath analyzer, the arresting officer or by any other competent individual." 19 CSR 25-30.060(7). The regulation included forms for the operator to certify that "[s]ubject [was] observed for at least 15 minutes by [operator name]. No smoking or oral intake of any material this time; if vomiting occurs, start over with the 15[-]minute observation period." 19 CSR 25-30.060. The regulations did not, however, define the term "observation period."

The Missouri Department of Health and Senior Services promulgated amendments to section 19 CSR 25-30.011 in late 2012, nearly a year after *Hilkemeyer* was decided, which included adding a definition for "observation period" at 19 CSR 25-30.011(2)(H). This definition of "observation period" was in effect at the time of Comer's arrest and is set forth in its entirety in the Judgment. The definition requires only that during the 15-minute observation period, the "operator shall remain close enough to a subject to ***reasonably ensure***, using the senses of sight, hearing, or smell, that a test subject does not smoke, vomit, or have any oral intake," and expressly provides that "***[d]irect observation is not necessary*** to ensure the validity or accuracy of the test result." (Emphasis added.)

9

Comer acknowledges the definition of "observation period" set forth at 19 CSR 25-30.011(2)(H) by setting it out in her opening brief, but curiously omits the second sentence, which expressly negates the need for "direct observation" for the entire 15-minute observation period as a condition of ensuring the validity or accuracy of a breath test result. Comer also fails to address that the definition of "observation period" set forth in 19 CSR 25-30.011(2)(H) was not promulgated until 2012, and thus after *Hilkemeyer* was decided.

"Administrative rules and regulations are interpreted under the same principles of construction as statutes." *Mo. Corr. Officers Ass'n v. Mo. Off. of Admin.*, 662 S.W.3d 26, 35 (Mo. App. W.D. 2022) (quoting *Matter of Trenton Farms RE, LLC v. Mo. Dep't of Nat. Res.*, 504 S.W.3d 157, 164 (Mo. App. W.D. 2016). 19 CSR 25-30.011(2)(H) plainly and unambiguously provides that an operator need only reasonably ensure that no oral intake takes place during the 15-minute observation period using the senses of sight, hearing, or smell, and that "direct observation" is not required during the entire 15-minute observation period in order for an operator to reasonably ensure no oral intake. Comer's contention that the breath test was not valid because Deputy Verble admitted that he "broke direct observation" of Comer in the seconds he walked around the front of his patrol car and while completing paperwork while seated in the front of the patrol car ignores the plain language of 19 CSR 25-30.011(2)(H).

Comer does not argue that the trial court's finding that Deputy Verble reasonably ensured that Comer had no oral intake during the 15-minute observation period is unsupported by the evidence. Nor would this argument have been successful. Deputy

Verble testified that he used his senses of sight, hearing, and smell to observe Comer during the 15-minute observation period. The observation period began immediately before Deputy Verble required Comer to perform field sobriety tests during which he was carefully observing Comer to determine whether she displayed indicia of intoxication. Deputy Verble then placed Comer in handcuffs behind her back, and secured Comer in the rear of his patrol car with a seatbelt. Though Deputy Verble was not in the patrol car with Comer during the few seconds it took for him to walk around the front of the patrol car to the driver's seat, or again when he returned to the rear of the patrol car to administer the breath test, after these extremely brief periods of time, Deputy Verble was able to use his senses of sight and smell to reasonably ensure that Comer had not vomited or smoked, or had any other oral intake. And, while Deputy Verble was seated in the front seat of his patrol vehicle, he could use his senses of sight, smell, and hearing to reasonably ensure that Comer had no oral intake, despite the fact he was entering data in his computer and completing paperwork. Accordingly, the trial court did not err when it concluded that based on the evidence in this case, Comer's breath test was taken in accordance with Deputy Verble's 15-minute observation period of Comer was valid pursuant to 19 CSR 25-30.011(2)(H), thus rendering the breath test results admissible.

Comer's point on appeal is denied.

**Conclusion**

The Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur

12