

# In the
# Missouri Court of Appeals
# Western District

**CARTER ANDREW KINKEAD,**
            **Appellant,**

                                    **WD85506**
                                    **OPINION FILED:**
                                    **August 15, 2023**

**v.**

**DIRECTOR OF REVENUE,**
            **Respondent.**

### Appeal from the Circuit Court of Boone County, Missouri
The Honorable Stephanie Marie Morrell, Judge

Before Division Four:  Gary D. Witt, Chief Judge, Presiding, Janet Sutton, Judge,
Matthew P. Hamner, Special Judge

Carter Kinkead ("Kinkead") appeals the judgment of the Circuit Court of Boone

County, Missouri ("trial court"), following a bench trial, affirming the Director of

Revenue's ("Director") decision to suspend Kinkead's driving privileges pursuant to section 302.525.[1] In a single point on appeal, Kinkead argues:

> The trial court erred when it entered its judgment sustaining the revocation of [Kinkead's] license to drive for driving while intoxicated and determining that the relevant breath test was taken in accordance with applicable regulations and was valid in that [Arresting Officer] did not conduct a full proper 15-minute observation pursuant to 19 CSR 25-30.011(2)(H) and RSMO sections 577.020 and 577.037.

Finding no error, we affirm the judgment of the trial court.

## Factual Background[2]

On March 12, 2021, Arresting Officer arrived at a traffic stop at 1:45 a.m., where Kinkead had been pulled over by another officer for failure to use vehicle lights when required by statute. Kinkead exited his vehicle and began speaking with Arresting Officer on the sidewalk. Arresting Officer observed that Kinkead was swaying when he spoke and exhibited a strong odor of intoxicants from his breath. Kinkead stated that he had been drinking a few hours beforehand after finishing his shift at a bar. At Arresting Officer's request, Kinkead performed several standardized field sobriety tests, including the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg-stand test, during each of which Kinkead exhibited signs of impairment. Kinkead also consented to a portable breath test, which produced a positive result for the presence of alcohol. Arresting Officer arrested Kinkead for suspicion of driving while intoxicated.

---

[1] All statutory references are to Revised Statutes of Missouri (2016), as updated by supplement, unless otherwise indicated.

[2] We view the evidence in the light most favorable to the trial court's judgment. *Vasquez v. Dir. of Revenue*, 658 S.W.3d 553, 555 n.1 (Mo. App. W.D. 2022).

2

Arresting Officer placed Kinkead in the back seat of his patrol car and buckled the seatbelt. Kinkead's hands were handcuffed behind his back. Arresting Officer testified that he observed Kinkead for fifteen minutes before administering the Alco-Sensor IV breath test. During the fifteen-minute observation, Arresting Officer testified that he was sitting in the front driver's seat and could hear and smell Kinkead in the back seat. Arresting Officer testified that Kinkead did not do anything during the fifteen-minute observation period, including vomiting or throwing up. After the fifteen-minute observation period, Kinkead consented to a breathalyzer test, which produced a blood alcohol content of .208 percent. Director's Exhibit A constituted a certified copy of the Director's file that included the arresting officer's Alcohol Influence Report (AIR), which was admitted at trial. The results of the breath test contained in the Director's Exhibit A were admitted as part of that exhibit. Kinkead's trial counsel objected to the admission of portions of Exhibit A, stating, "And Your Honor, obviously, you know the packet comes in under [section 302.312]. But we would object to the blood test results under 19 CSR 25-50, as well as *White v. Department* [sic] *of Revenue*, stating there is no presumption of validity for the breath test and that this [sic] Department of Revenue must prove that." The trial court stated, "Over objection, [Director's] A will be admitted."

During cross-examination of Arresting Officer, Kinkead introduced the body cam video of Kinkead's arrest, which the trial court admitted into evidence. In the video, Arresting Officer examines the interior of Kinkead's mouth and begins the fifteen-minute observation period at 2:05:56 a.m. while Kinkead is seated in the rear passenger seat. Arresting Officer closes the rear passenger door at 2:06:00 and grabs several items from

3

the roof of the patrol vehicle. Arresting Officer then opens the front passenger door at 2:06:11 and has a frontal view of Kinkead in the back seat as Arresting Officer places Kinkead's property in plastic bags. Arresting Officer then closes the front passenger door at 2:07:53 and walks around the rear of the vehicle for seven seconds until he opens the driver's door at 2:08:00. Arresting Officer remains in the driver's seat for the majority of the fifteen-minute observation period, completing paperwork as Kinkead sits in the rear passenger seat. On several occasions, Arresting Officer asks Kinkead questions pertaining to his paperwork, and Kinkead answers. At 2:20:40, Arresting Officer exits the driver's seat and walks around the front of the vehicle, where he opens the front passenger's side door at 2:20:50. Arresting Officer then opens the rear passenger's side door to read Kinkead the implied consent form, and after Kinkead consented to the breath test, Arresting Officer set up the breathalyzer machine in the front passenger seat and administered the test to Kinkead at 2:24:13 a.m.

The trial court issued findings of fact, conclusions of law, and judgment sustaining the Director's suspension of Kinkead's driving privileges. Relevant to this appeal, the trial court found that Arresting Officer checked Kinkead's mouth for any foreign objects and subsequently conducted a fifteen-minute observation period. The trial court's judgment acknowledged Kinkead's argument that Arresting Officer did not conduct a proper fifteen-minute observation period and ruled that Arresting Officer did follow the applicable regulation, in that Arresting Officer remained close to Kinkead and reasonably ensured that Kinkead did not have any oral intake. This appeal follows.

4

## Standard of Review

A trial court's judgment in driver's license suspension and revocation cases is reviewed as any court-tried civil case. *White v. Dir. of Revenue*, 321 S.W.3d 298, 307 (Mo. banc 2010). "In an appeal from a court-tried civil case, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Boggs v. Dir. of Revenue*, 564 S.W.3d 693, 696 (Mo. App. W.D. 2018) (internal citations omitted). "The evidence and reasonable inferences drawn therefrom are viewed in the light most favorable to the trial court's judgment and all contrary evidence and inferences are disregarded." *Id.*

"We review the trial court's rulings as to the admissibility of the evidence for an abuse of discretion." *Courtney v. Dir. of Revenue*, 477 S.W.3d 659, 666 (Mo. App. W.D. 2015). "[The trial court] abuses this discretion when its ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.*

## Analysis

Kinkead's sole point on appeal alleges the trial court erred in finding that Arresting Officer properly observed the fifteen-minute observation period, pursuant to 19 CSR 25-30.060, prior to administering the breath test. As an initial matter, Director argues that Kinkead failed to preserve this issue for appellate review because he did not specifically object to the admissibility of Director's Exhibit A on the particular ground that the fifteen-minute observation period was properly observed.

"The general rule requires that an objection be timely made, and usually this necessitates that it be made at the earliest opportunity after the objectionable character of the evidence becomes apparent." *Krieger v. Dir. of Revenue*, 14 S.W.3d 697, 702 (Mo. App. E.D. 2000). "[A]n objection to evidence must be sufficiently clear and definite so that a court will understand the reason therefor." *Id.* at 701. Generally, "[a]n objection encompassing a broad range of situations that are not readily apparent does not preserve error." *Id.* at 701-02. However, where a claim of foundational deficiency is sufficiently clear to allow the trial court to rule on the admissibility of the breath test results, even if the original objection to its admission was not, the claim is preserved. *See Collins v. Dir. of Revenue*, 399 S.W.3d 95, 99 (Mo. App. W.D. 2013); *see also, Courtney*, 477 S.W.3d at 668 ("The purpose of the rule is to ensure the objection is sufficient for the trial court to be able to properly understand and rule upon it.").

Here, the only evidence admitted at trial regarding the results of the breath test was Director's Exhibit A, which contained the AIR documenting that Kinkead's BAC was .208 percent. *Compare Collins*, 399 S.W.3d at 100 (finding that the results of the breath test were admitted into evidence via Director's Exhibit A *and* the officer's testimony). When the Director offered Exhibit A into evidence at trial, Kinkead stated the following general objection: "[W]e would object to the blood test results under 19 CSR 25-50, as well as *White v. Department* [sic] *of Revenue*, stating that there is no presumption of validity for the breath test and that this [sic] Department of Revenue must prove that." The trial court admitted Exhibit A over the objection.

6

Kinkead's objection to the admission of the breath test "under 19 CSR 25-50" (we assume Kinkead's counsel intended to say 19 CSR 25-30[3]) could encompass a wide-range of possible objections, in that Chapter 30 governs all determinations of blood alcohol by blood, breath, saliva, and urine analysis. In this regard, Kinkead "offered a vague foundational objection." *See Collins*, 399 S.W.3d at 98. However, similar to *Collins*, it is clear that the objection was sufficiently clear, under this record, to allow the trial court to make a determination based on the objection. The trial court issued findings of fact and conclusions of law and stated that "[Kinkead] argued that [Arresting Officer] did not conduct a proper 15 minute observation period and, therefore, the test result is invalid." The trial court analyzed the applicable regulation pertaining to the fifteen-minute observation period and concluded that "[Arresting Officer] reasonably ensured that [Kinkead] did not have any oral intake. Based on the evidence in this case [Kinkead's] breath test was taken in accordance with the regulations and is valid, and the breath test was admissible." Therefore, although Kinkead's objection was a vague foundational objection, we find this fact irrelevant in light of the record before us in this case because the trial court understood the basis of the objection and interpreted it as an objection regarding the application of the fifteen-minute observation period, as articulated in its findings of fact and conclusions of law. Accordingly, Kinkead's claim is preserved for our

---

[3] Title 19, Division 25 of the Missouri Regulations pertains to the Department of Health and Senior Services and the Missouri State Public Health Laboratory. Within this title and division, Chapter 30 outlines the regulations for collecting samples to test blood alcohol content, including the specific provisions regarding the required fifteen-minute observation period. *See* 19 CSR 25-30.011(2)(H). There is no Chapter 50 within Title 19, Division 25.

review. *Collins*, 399 S.W.3d at 99. At oral argument the Director conceded that the trial court clearly understood the basis of Kinkead's objection based upon the trial court's ruling.

Turning to the merits of the case, Kinkead argues solely that the trial court erred in finding that Arresting Officer followed the required fifteen-minute observation period and that the breath test was valid and admissible. "To establish a prima facie case for suspension of a driver's license, Director must present evidence that, at the time of the arrest: (1) the driver was arrested on probable cause for violating an alcohol-related offense; and (2) the driver's BAC exceeded the legal limit of .08 percent. *O'Rourke v. Dir. of Revenue*, 409 S.W.3d 443, 447 (Mo. App. E.D. 2013). "Director may introduce evidence of a breathalyzer test to establish that the driver's BAC exceeded the legal limit." *Id.* "To establish a prima facie foundation for admission of breathalyzer test results, Director must demonstrate the test was performed: (1) by following the approved techniques and methods of DHSS; (2) by an operator holding a valid permit; (3) on equipment and devices approved by DHSS." *Id.*

When using the Alco-Sensor IV breathalyzer, the testing officer is instructed to observe a fifteen-minute observation period prior to administering the test. 19 CSR 25-30.060(8). During this time, the regulations provide, "No smoking, oral intake or vomiting during this time; if vomiting occurs, start over with 15 minute observation period." *Id.* The regulations define "observation period:"

> Observation period is the minimum fifteen- (15-) minute continuous period that ends when a breath sample has been provided into the approved breath analyzer, during which time the operator shall remain close enough to a subject to reasonably ensure, using the senses of sight, hearing, or smell, that a test subject does not smoke, vomit, or have any oral intake during the

8

fifteen- (15-) minute observation period. Direct observation is not necessary to ensure the validity or accuracy of the test result[.]

19 CSR 25-30.011(2)(H).

"The 15-minute observation period is intended to ensure that any alcohol in a test subject's mouth has time to dissipate before a breath sample is taken so that mouth alcohol does not affect the accuracy of a test result." *O'Rourke*, 409 S.W.3d at 447. Previous opinions from this Court have emphasized "the importance of the fifteen-minute observation period in reaching a scientifically reliable result on the breathalyzer test[.]" *See Collins*, 399 S.W.3d at 103 (Witt, J., concurring).

Kinkead's argument, essentially, is that the trial court abused its discretion in admitting the results of the breath test because Arresting Officer's fifteen-minute observation period was inadequate, in that he ruptured the continuity of the observation period by walking around the vehicle multiple times. Therefore, Kinkead argues that the results of the breath test were inadmissible.[4]

---

[4] Kinkead's brief does not explicitly state that the results of the breath test should have been excluded because the trial court abused its discretion, however this is how we must interpret his argument based on the appropriate standard of review for admission of evidence in a court-tried case. The final paragraph of Kinkead's brief does state, "In admitting the breath test results, the Judgment of the Trial Court is against the weight of the evidence and misapplies the law." To the extent that Kinkead argues that the judgment is both against-the-weight-of-the-evidence and misapplies the law, this is not the argument raised in his point relied on, and these arguments would have to "have been set forth in two distinct points relied on." *See Fastnacht v. Ge*, 488 S.W.3d 178, 184 (Mo. App. W.D. 2016) ("Multiple claims of error in one point relied on render the point 'multifarious' and violate Rule 84.04.). A fair reading of Kinkead's brief leads us to conclude that he is arguing the breath test result was improperly admitted into evidence and without that evidence the trial court's judgment would have been against-the-weight-of-the-evidence.

To the extent that Kinkead argues that the trial court's judgment is against-the-weight-of-the-evidence, he fails to follow the four-step analytical sequence for against-the-weight-of-the-evidence challenges set forth in *Houston v. Crider*, 317 S.W.3d 178, 187 (Mo. App. S.D. 2010):

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
(2) identify all of the favorable evidence in the record supporting the existence of that proposition;
(3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,

Here, the trial court did not abuse its discretion in admitting the results of the breath test. The trial court found there was a sufficient foundation for the admission of Exhibit A into evidence, including the AIR which contained the results of the breath test. In support of this foundational finding, the trial court found that the Alco-Sensor IV was tested within 35-days of Kinkead's breath test, that Arresting Officer certified that he held a valid permit to conduct such testing, and that Arresting Officer followed the approved procedures in administering the breath test. Regarding this latter point, the trial court found that Arresting Officer checked Kinkead's mouth for any foreign objects and subsequently conducted a 15-minute observation period, in which he reasonably ensured that Kinkead did not smoke, vomit, or have any oral intake. These findings by the trial court were sufficient to admit the result of the breath test contained within Exhibit A into evidence.

Kinkead argues, however, that the trial court abused its discretion in admitting this evidence because, based on Kinkead's interpretation of the body cam video that was introduced on cross-examination, Arresting Officer did not follow the approved procedures for conducting a breath test. Although the body cam video showed that Arresting Officer was briefly outside of the vehicle multiple times during the observation period while Kinkead sat seat-belted and handcuffed in the back seat with the doors closed, the trial court could have believed Arresting Officer's testimony that he continued to observe Kinkead throughout the entire fifteen-minute observation, even when he was outside the vehicle. Further, even if Arresting Officer did momentarily break direct observation of

(4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence that it fails to induce belief in that proposition.

Kinkead, the plain language 19 CSR 25-30.011(2)(H) provides that direct observation is not required during the entire 15-minute observation period in order for an operator to reasonably ensure no oral intake, smoking, or vomiting. *Comer v. Dir. of Revenue*, WD85493, slip op. at 10 (Mo. App. W.D. July 25, 2023). In *Comer*, we held that the officer reasonably ensured that the subject had no oral intake, smoking, or vomiting during the "extremely brief periods of time" that it took the officer to "walk around the front of the patrol car to the driver's seat, or again when he returned to the rear of the patrol car to administer the breath test." *Id.* at 11. Similarly, in this case, Arresting Officer's momentary break in direct observation was a matter of seconds as he walked around the front of the vehicle, thereby still ensuring that Kinkead did not have any oral intake. Therefore, the trial court did not err in admitting the evidence, as it was not clearly against the logic of the circumstances or so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration for the trial court to admit the breath test results.

Because the Director laid the foundation for the admission of the breath test results contained in Exhibit A, the evidence introduced by Kinkead showing Arresting Officer outside the vehicle goes to the weight of the evidence afforded by the trial court, not the admissibility of the evidence. *O'Rourke*, 409 S.W.3d at 450. To the extent that Kinkead argues that the trial court's judgment is against-the-weight-of-the-evidence, we emphasize that in a contested case, the trial court was free to believe or disbelieve the evidence. *White*, 321 S.W.3d at 308. As previously noted, the trial court could have believed Arresting Officer's testimony that, even while outside of the vehicle, he reasonably ensured that

11

Kinkead did not smoke vomit, or have any oral intake. We will "not second guess the trial court on the contested facts." *Id.* at 312.

Further, the trial court could have inferred from the evidence that Arresting Officer sufficiently observed Kinkead while Arresting Officer sat in the front seat completing paperwork. Arresting Officer spoke with Kinkead during this time and heard all of Kinkead's responses even while Kinkead sat in the back seat. The applicable regulation provides that "[d]irect observation is not necessary to ensure the validity or accuracy of the test result[.]" 19 CSR 25-30.011(2)(H). In this regard, the trial court could have found from the evidence that Arresting Officer utilized all of the senses including sight, hearing, and smell while sitting in the front seat to reasonably ensure that Kinkead did not smoke, vomit, or have any oral intake during that time. In addition, the fact that Kinkead was confined by the seatbelt and handcuffed behind his back would have restricted his ability to place anything in his mouth. Therefore, the trial court's judgment was not against-the-weight-of-the-evidence.

Kinkead cites *Hilkemeyer v. Director of Revenue*, 353 S.W.3d 62 (Mo. App. S.D. 2011) to support his argument that the trial court erred in admitting the breath test results. In *Hilkemeyer*, the arresting officer testified that he observed the Driver during the required fifteen-minute observation period. *Id.* at 63. However, he testified that five of the fifteen-minutes occurred while he transported Driver to the Sheriff's office. *Id.* at 64. Once at the Sheriff's office, the officer conducted the remaining ten minutes of the observation period while entering data into his computer. *Id.* Following the observation period, the Driver's breath test returned a BAC result of .111 percent. *Id.* The trial court found that "[t]he

officer admitted that while he was multitasking he was not able to directly observe [Driver] *and* that it would have been difficult for him to *sense* if [Driver] regurgitated or belched during that time." *Id.* at 66. Accordingly, the trial court found that the Director failed to lay a proper foundation for the admission of the breath test results and thus excluded it from evidence. *Id.* The Southern District of this Court affirmed the judgment because (1) the Driver had no obligation to prove that something occurred during the fifteen-minute observation period that could have interfered with the results of the breathalyzer test, pursuant to the then-recently decided Missouri Supreme Court case, *White*, 321 S.W.3d at 306; and (2) the Director's argument that the trial court erroneously limited the term "observe" to the "sense of sight" was unsupported by the record. *Hilkemeyer*, 353 S.W.3d at 67.

Kinkead's reliance on *Hilkemeyer* is misplaced. Although factually similar, the procedural posture and arguments presented in *Hilkemeyer* are vastly different from this case. Most obviously, the trial court's judgment in *Hilkemeyer* found that the Director failed to lay a proper foundation for the admission of the breath test results. The evidence and inferences, therefore, would be viewed in the light most favorable to that ruling under our standard of review. In this case, by contrast, we must view the evidence in the light most favorable to the trial court's ruling that the Director *did* lay a proper foundation for the admission of the breath test result. Here, the trial court did not abuse its discretion in admitting the breath test results because there was sufficient evidence for the trial court to find that Arresting Officer properly observed Kinkead for fifteen minutes. Further, as we recently noted in *Comer*, *Hilkemeyer* was decided in September 2011, a year before the

13

Missouri Department of Health and Senior Services amended 19 CSR 25-30.011 to include a definition of "observation period," which provides that the operator "remain close enough to the subject to reasonably ensure, using the senses of sight, hearing, or smell, that a test subject does not smoke, vomit, or have any oral intake," and expressly provides that "[d]irect observation is not necessary to ensure the validity or accuracy of the test results." *Comer*, WD85493, slip op. at 9. The regulations in effect at the time *Hilkemeyer* was decided did not define "observation period." *Id.*

Further, the arguments in *Hilkemeyer* were that the Driver failed to produce evidence of vomiting or oral intake, and that trial court misapplied the law relating to the term "observe." Neither of those arguments pertains to this case. Here, Kinkead argues that the trial court should have excluded from evidence the results of the breath test because the evidence he presented showed Arresting Officer outside of the vehicle during the observation period. As we have discussed, the trial court's admission of the evidence was not an abuse of discretion, and "once admitted into evidence, the court was free to accept or reject it as with any other evidence presented at trial." *O'Rourke*, 409 S.W.3d at 450. The trial court could have inferred from the evidence that Arresting Officer reasonably ensured, using the senses of sight, hearing, or smell, that Kinkead did not smoke, vomit, or have any oral intake during the fifteen-minute observation period.[5] Therefore, *Hilkemeyer* does not aid Kinkead.

Point denied.

---

[5] Kinkead solely argues that the breath test result was inadmissible but does not argue that the result once admitted was unreliable or not credible; therefore, we do not further address the reliability of the result.

14

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
Gary D. Witt, Judge

All concur